## BLAKE *vs.* THE BOARD OF SUPERVISORS OF LIVINGSTON COUNTY.

An obligation which, though called a bond, is payable to a person named therein, "or to his certain attorney, executors, administrators or assigns," belongs to that class of obligations which has been expressly held, in this State, not to be specialties, but in the nature of commercial paper, negotiable by delivery, under an assignment in blank.

An action upon such an obligation is to be governed, in all respects, by the rules applicable to commercial paper.

A bond, or obligation, for $900, issued by the county of L. in pursuance of resolutions of its board of supervisors, to pay bounties to soldiers enlisted into the service of the United States, was delivered to the town of S., in that county, to fill its quota in the United States service. C. enlisted for that town, was mustered into the service, and received the bond as the bounty which such town had offered; the town was credited with the recruit; and. the transaction between the town and the government of the United States was closed, as to that recruit, and was not afterwards opened, as between the two bodies. The credit was never withdrawn, by the general government, but remained, in satisfaction of the requisition, *pro tanto.*

*Held,* 1. That the instrument had a valid inception, and became and was a binding and subsisting obligation, in the hands of the payee, against the county.

2. That there was no failure of the consideration of the obligation; notwithstanding the payee did not serve out any considerable portion of the term for which he enlisted; having been discharged from the service of the government, upon the application of his father, on the ground of the want of proper age for the service, which the recruit had misrepresented; the government retaining what had been paid to him for bounty, and thus affirming the mustering in of the recruit, and acknowledging performance to that extent, by the town.

3. That the validity of the instrument was not in any respect destroyed or injured by reason of the transactions or dealings between the recruit and the government.

4. That the fact that the payee, at the time he made the assignment of the obligation, under which the plaintiff derived his title, was an infant incapable of making or authorizing an assignment, was no defense to an action upon the instrument against the board of supervisors of the county of L.; inasmuch as it did not concern the defendants. That the transfer was good as against all the world, except the infant himself; and that so long as *he* did not raise the objection of infancy, the obligors could not raise it.

5. That the plaintiff having acquired the obligation by assignment from the apparent owner, and for a valuable consideration paid, that was all that was material, and more than was necessary for him to prove.

6. That the suggestion that the recruit and payee obtained the obligation, in the first instance, by fraudulently misrepresenting his age, had no force or foundation; no such defense having been alleged, in the answer, and no such fact proved.

APPEAL, by the defendants, from a judgment entered upon the report of a referee.

The action was brought upon a bond, for $900, issued by the county of Livingston, in pursuance of resolutions of its board of supervisors, to pay bounty to volunteers enlisted under the call of the President of the United States, made July 18, 1864.(*a*) The complaint alleged that Peter Clark, named in the said bond as obligee, duly enlisted into the military service of the United States, and that said bond was issued and delivered to him. That thereafter, in due form of law, the said bond became the property of the United States of America; said Peter Clark having, in due form of law, and for a valuable consideration, sold the same to the United States, and assigned the same to William T. Remer, provost marshal, for the use and benefit of the United States. That thereafter the said bond was duly sold and assigned to the plaintiff, for a valuable consideration. The complaint, then, claimed

(*a*) The bond was in the following form:

"LIVINGSTON COUNTY BOND FUND.

No. 1105.        [25 ct. Int. Rev. Stamp on original, duly canceled.]        $900.00.

*Livingston County, N. Y.*

Know all men by these presents, that the county of Livingston, of the State of New York, is held and firmly bound unto Peter Clark, of Springwater, in the sum of nine hundred dollars, to be paid to the said Peter Clark, or to his certain attorney, executors, administrators or assigns.

For which payment, well and truly to be made, the said county binds itself firmly by these presents.

Sealed with its seal, and dated the 20th day of September, in the year of our Lord one thousand eight hundred and sixty-four.

Whereas, at a special meeting of the board of supervisors of the county of Livingston, duly called and held at the court house, in Geneseo, September 2d, 1864, the following resolution was adopted:

Resolved, that each town in the county of Livingston be authorized, to in-

Blake *v.* Supervisors of Livingston County.

judgment for the amount of said bond and interest. The answer admitted the existence of the county of Livingston as a body politic and corporate, and having a board of supervisors duly organized pursuant to law, and the adoption by said board of the resolutions set forth in the complaint, and denied all the other allegations in the complaint.

The action was referred to a referee, who reported that on the trial of said cause the following facts were established by the evidence given by the respective parties and by their admissions: That the defendants were at the time, mentioned in the complaint, and since hitherto have been, a body politic and corporate, and as such passed the resolutions of the 3d of August and of the 2d day of September, 1864, which are severally set forth in the complaint and answer. That on the 6th day of September, 1864, Peter Clark, the obligee named in the bond mentioned in the complaint, with the knowledge and assent of the supervisor of the town of Springwater, volunteered into the military service of the United States as a recruit, from and on account of said town, and on that day was duly examined by the proper authorities, signed the necessary papers and took the prescribed oath; and made the declaration, among other things, that he was of

crease its bounty to a sum not exceeding $1000; and that the treasurer of this county be authorized to issue county bonds as each supervisor may call for them, subject to the same regulations as prescribed by the resolution of the board, passed August 3, 1864.

And whereas this bond is issued in pursuance of the foregoing resolution and the statute in such case made and provided,

Now, therefore, the condition of this obligation is such, that if the above bounden obligor shall and do well and truly pay, or cause to be paid unto the above named obligee, his certain attorney, executors, administrators or assigns, the sum of nine hundred dollars, at the office of the treasurer of said county of Livingston, with interest thereon payable on the first day of February in each year, and the principal sum to be paid on the first day of February, 1868, without fraud or delay, then the preceding obligation to be void; otherwise to remain in full force and virtue.

CHAUNCEY METCALF,
G. W. ROOT, Chairman B'd Supervisors.                County Treasurer."

the age of 18 years and 5 months. That on the day following, the 7th of September, the said Clark was duly mustered into the service of the United States, for one year or during the war, from the date of his enlistment in company —, 1st regiment New York Vet. Cav. Volunteers, and as a soldier of the United States was entitled to bounty, pay, rations and clothing as were or might be established by law for volunteers, which he agreed to accept, and was subject to the articles of war, which he agreed to observe. It was also proved that on or about the 20th of the month last mentioned, the bond mentioned in the complaint was duly made and issued to the supervisor of the town of Springwater, in the county of Livingston, at his request, under and in pursuance of the resolutions of the defendants above mentioned, and delivered to him to be disposed of and used by said supervisor for the purposes in said resolutions set forth. That said supervisor on the same day delivered the said bond to Mr. Wood, clerk of the board of enrollment, for the sole use and benefit of said Clark, the obligee in said bond mentioned, as part of the bounty and consideration to be paid to said Clark for his enlistment. That said Clark had notice of the delivery of said bond to Wood, for him as aforesaid, and assented to the same, and subsequently directed a disposition of said bond in the manner and for the purpose hereinafter mentioned. That under the call of the President of the United States, referred to in the resolutions of the defendants above mentioned, the town of Springwater was required to furnish as its quota a certain number of volunteers for the military service of the United States, or be liable to have any deficiency in said quota drafted from the citizens of said town, subject to military duty, according to the laws in such case provided. That said Clark was one of the volunteers so procured, and the town of Springwater, at the time he was mustered into service as aforesaid, had

Blake *v.* Supervisors of Livingston County.

credit for him as such, and that such credit had never been annulled or withdrawn. It was further proved that after said Clark had been mustered into the service of the United States as aforesaid, proceedings were instituted by his father to procure the discharge of said volunteer from the military service of the United States, upon the ground that said Clark was under the age of 18 years at the time of his enlistment. That the affidavits and other papers pertaining to said application, were transmitted by Captain Remer, the provost marshal, to General Diven, provost marshal general of the western division, New York, on or about the 22d of September, and by the latter to James B. Fry, provost marshal general, at Washington, on the 21st of October, and by said Fry, on the 26th of the same month, to the adjutant general of the United States army. It was further proved that on or about the 20th of September, in the year last mentioned, Clark directed the said Wood to assign and deliver the bond to said Remer, which was done accordingly, the written assignment upon the instrument being made, and the signature of Clark thereto affixed by said Wood.(*b*) The referee found as a fact, from the evidence, that although the written assignment was general in its terms, it was the understanding and purpose of the parties, that the title and possession of the bond should be transferred to Remer as a subordinate of the war department, subject to the order and final disposition of the same, by the secretary of war. It was also proved that on the 9th of November, 1864, said Clark, by the order of the secretary of war, was discharged from the service of the United States, the order concluding with the following direction:

(*b*) The assignments on the bond were as follows:

"For a valuable consideration I hereby assign the within obligation to Wm. T. Remer.          (Signed)          PETER CLARK."
November 1, 1864.

"For valuable consideration I hereby assign the within bond to Zara H. Blake. July 20, 1865.                    WM. T. REMER."

' This soldier is entitled to pay &c. only under paragraph 137, Revised U. S. Army Regulations of 1863." It was further proved that on the 20th of December, 1864, the said Remer applied to the department for instructions as to whether he should turn over the bond in question to the United States, or convert the same into money; that on the 31st of December he received instructions to convert the same into money, legal tender notes, and deposit the money to the credit of the United States as usual. That in pursuance of such instructions, Remer, on or about the 20th of July, 1865, sold and assigned in writing and delivered the bond in suit to the plaintiff for the sum of $720, which was deposited and paid into the treasury of the United States. That his action and proceedings in the premises were duly reported by said Remer to the war department, and subsequently, on the 26th of October, 1865, duly approved.

It was further proved that said Clark was a minor under the age of 21 years at the time of his discharge from the service of the United States, as above mentioned. That the application and subsequent proceedings to and including said discharge were under the acts of congress of February 24, 1864, section 20, and section 5 of the act of July 4, 1864, which in substance declare that the secretary of war shall order the discharge of all persons in the military service of the United States who are under the age of 18 years at the time of their application for their discharge, when it shall appear upon due proof that such persons are in the service without the consent, either express or implied, of their parents or guardians; *provided*, that such persons, their parents or guardians, shall first repay to the government, and to the State and local authorities, all bounties and advance pay which may have been paid to them.

It was also proved, that on February 7, 1868, and after said bond became due, the plaintiff presented the same

to, and demanded payment thereof, of the treasurer of said county, at his office, which was refused.

The referee found as conclusions of law:

1st. That the unconditional delivery of the bond to Wood, for the sole benefit of the obligee, vested the title to the instrument in the latter, which thus became obligatory on the defendant.

2d. That Clark, although a minor, was enabled to contract with the general government for his services, and the ability to contract carried with it the incidental right to receive and dispose of the bounty which was offered as an inducement to the agreement.

3d. That the assignment to Remer, and the delivery in pursuance of it, transferred the whole title, legal and equitable, to the assignee, subject to the future order and disposition of the secretary of war, of the assigned security; and that the subsequent sale to the plaintiff in pursuance of such order vested a title in the plaintiff which would enable him to maintain this action.

4th. That said Clark continued in the service of the United States until the 9th of November, and the town of Springwater had credit for him as a volunteer for the whole period of his enlistment; that there was no failure of consideration, and the liability of the defendants was not affected by the discharge granted by the secretary of war.

5th. That the plaintiff was entitled to recover the sum specified in said bond, with interest from the 20th of September, 1864, to the date of the report. The aggregate principal and interest being $1283.25.

*John A. Vanderlip*, for the appellant.

I. The remedy of the plaintiff is not by action, but mandamus. The claim was presented to the board of supervisors, but was withdrawn before final action. The board did not audit, or refuse to audit, the claim. The claim

should have been submitted to the board, and if they refused to act, the remedy of the plaintiff was by mandamus. The county treasurer could not pay the, bond, unless the board had provided funds for that purpose. If the claim were a just one, the court, upon a mandamus, would direct them to lay a tax for its payment, but the statute gives no right of action against the county for such a claim. *Brady* v. *Supervisors of New York*, (2 *Sand.* 460,) is in point, and holds that no action can be maintained against a county except for "such causes of action (and no other) as could not be presented to, and examined and allowed by the board of supervisors as county charges." Of this class, would be claims for the malfeasances of county officers, and claims arising from torts, for which the county may be liable. "Such controversy," in the first section of that title, means, as we think, "such a claim, or cause of action, as cannot be settled, or adjusted, on the application of the party, in the exercise of the ordinary powers of the board of supervisors, and which is not a county charge, until it passes into judgment. (*Id. p.* 471.) This was affirmed by the Court of Appeals, (10 *N. Y.* 260,) the court adopting the opinion of Oakley, Ch. J., as the basis of its decision.

II. The United States Government never acquired title to the bond in suit. The assignment by Wood to Remer was void, because Clark, the obligee of the bond, being an infant, could not make an attorney. (*Stafford* v. *Roof*, 9 *Cowen,* 626.) The bond was never delivered to Clark, but to Wood, the clerk of the board of enrollment, and no manual delivery could have been made by him. He enlisted Sept. 6, 1864, and took a furlough; he returned in four or five days, and remained not exceeding two days, and was never seen afterwards. The fact found by the referee, that Clark directed the assignment of the bond, is therefore entirely unsupported by evidence, and in direct conflict with all the evidence on the subject. The

referee also finds, as a fact, that the town of Springwater had credit for Clark as a volunteer, and that such credit has never been annulled or withdrawn. If the latter fact be material, it is sustained by no evidence. The only testimony on the subject is that of provost marshal Remer. " The credit was never revoked, to my knowledge." But it is submitted that it is wholly immaterial whether the credit was revoked or not. Clark's contract, if he were capable of making one, was to serve one year in the federal army. This he could not do if his parents, or guardian, demanded his discharge, which they did, and the service was never rendered. The referee, assuming the assignment of the bond by his attorney to be voidable only, says: " In any view the assignment was voidable merely, at the election of the recruit. He has made no such election, and infancy, being a personal privilege, the defendants cannot make the election for him." The fallacy of this argument is apparent, when it is observed that at the time the action was commenced Clark was not capable of ratifying the act. 1st. He was not yet twenty years of age, and would not be until the following March. 2d. There is no evidence that he knew the bond had been assigned at all. The United States acquired no title to the bond, because no officer of the government was authorized to take it by purchase, or otherwise. Clark was discharged from the service by virtue of the act of congress of Feb. 24, 1864, which provides: " The secretary of war may order the discharge of all persons in the military service who are under the age of eighteen years, at the time of the application for their discharge, when it shall appear, upon due proof, that such persons are in the service without the consent, either express or implied, of their parents, or guardians: Provided, that such persons, their parents, or guardians, shall first repay to the government, and to the state and local authorities, all bounties and advance pay, which may have been paid to them."

This section was amended by the act of congress of July 4, 1864, declaring that the above section " shall be construed to mean that the secretary of war shall discharge minors under the age of eighteen years, under the circumstances, and on the conditions, prescribed in said section." By the terms of this law, upon the discharge of the minor, the bounty must be returned to the authority that advanced it; and there is no authority by law for the secretary of war, or any subordinate officer, to require the payment to the government of bounties paid by state and local authorities, as a condition of the discharge of the minor. This bond was held by the provost marshal as trustee for the county of Livingston. He acquired no title to it for himself, or the United States, and could transfer none to the plaintiff. The recruit, without authority of law, was required by the enrolling board to deposit his bounty with the board. When his father applied for his discharge, the recruit authorized Wood " to transfer the bond to Remer, in case of his (Clark's) discharge." The case of *Richardson* v. *Crandall*, (47 *Barb.* 335,) decided in the fifth district, is decisive of the power of public officers in cases like the one at bar. If the enrolling board, or its superiors, had no power to require a deposit of the bond for any purpose, *a fortiori*, they had no power to confiscate it to the use of the government.

III. The approval by the war department of the disposition made of the bond in suit, does not help the plaintiff. If the department had not the power to *direct* such disposition of it, it had no power to ratify it. The referee seemed to regard the direction of the department as to the disposition of the bond, and their subsequent approval of it, as important in the decision of the case. But this question is disposed of, and, it is submitted, properly, in the case of *Richardson* v. *Crandall*, above cited. After citing and approving the cases of the *State* v. *City of Buffalo*, (2 *Hill*, 434,) and *Delafield* v. *State of Illinois*, (26 *Wend.*

*Blake v.* Supervisors of Livingston County.

192,) the court say : " Applying the same test to this case, it is equally clear that no officer or department of the government, except congress, could have authorized the defendant to exact the deposit. Neither could either or any of them ratify it when done." It is said in *Little et al.* v. *Barreme,* (2 *Cranch,* 170:) " The instructions of the President of the United States are no justification, further than those instructions are warranted by law." (*See also Callagan* v. *Hallett,* 1 *Caines,* 104. *Ripley* v. *Gelston,* 9 *John.* 201. *Frye* v. *Lockwood,* 4 *Cowen,* 454.) And the cases cited in the brief of the counsel for the plaintiff in *Richardson* v. *Crandall.*

IV. The bond was issued upon the false representation of the obligee that he was eighteen years of age. He could not, therefore, have enforced the bond, and could not transfer the right to do so to another. The fact that such a declaration was made, and of its falsity, was proved by the plaintiff himself, and if it constituted a defense, it was the duty of the referee, and it is the duty of the court, on appeal, to conform the pleadings to the facts proved, and render judgment accordingly. It is insisted that every person is presumed to know his own age, and that a false declaration is *prima facie* fraudulent; but it is also submitted that if merely untrue, Clark could not have recovered upon the bond, and that his assignee stands in no better situation. The consideration failed by his being discharged from the obligation to perform the service which he had agreed to perform. The holder of a bond, however *bona fide,* is not, like the holder of commercial paper, protected against a defense which the maker might have against the original holder. He takes it subject to all equities. But the plaintiff in this case was a member of the board that required the deposit of the bond, and was cognizant of all the facts.

V. The referee erred in assuming that the bond and money received by Clark were to be repaid to the town of

Springwater instead of the county of Livingston.   He says: "If handed over to the defendant, it would not be a repayment within the meaning of the act, which implies a payment back to the authority from which it was received, and the county was not that authority."   This very question, in regard to the issuing of bonds by Livingston county, and this same class of bonds, had been made the subjects of judicial construction in the seventh district. In the case of *Magee* v. *Cutler*, (43 *Barb.* 239,) the court held, at general term, that the bonds were to pay a county, not a town bounty, and that the supervisors were only the agents of the county in distributing their munificence; and approve the decision of Judge J. C. SMITH, in another case, at special term, holding the same doctrine. (*See opinions of court, p.* 254, *et seq., and the opinion of Judge J. C. Smith, in note a, pp.* 257 *to* 259.)

VI. The referee was undoubtedly right in saying that the secretary of war "was clothed with judicial or *quasi* judicial powers to hear and determine upon the justice of the application, (for the discharge of Clark,) and to ascertain or direct the performance of the condition precedent to the right to such discharge prescribed in the 20th section of the act of the 4th of July, 1864." And in saying, "He is to determine upon the evidence presented to him, as to the non-age of the recruit, and under the proviso of the 20th section, whether he has received pay or bounty, and the amount; but it is insisted that he had no authority to determine" whether "it is to be repaid to the general government, state and local authorities, or divided between them, and the amount to which they are respectively entitled." It is submitted that the secretary was to inquire and determine, not whether the bounty was to be repaid to the general government, &c., but whether it was so repaid. He was satisfied, by the letter of the provost marshal stating that the money and bond were in his possession, subject to the order of the department, that the

Blake *v.* Supervisors of Livingston County.

repayment required by the act of congress had been made; and he made an order for the discharge of Clark, and nothing else, but adding, for the information and guidance of the officer: "This soldier is entitled to pay, &c., only under paragraph 137 Revised U. S. Army Regulations of 1863." This doubtless means paragraph 1337, which is as follows: "The retained pay is due to a discharged soldier unless forfeited by a sentence of a court martial, or as provided in paragraph 1340." The latter paragraph is as follows: "Every enlisted man discharged as a minor, or for other cause involving fraud on his part in the enlistment, or discharged by the civil authority, shall forfeit all pay and allowances due at the time of the discharge, and shall not receive any final statements." The discharge was granted November 9, 1864. On the 20th December, the provost marshal writes to the department for instructions as to the disposition of the bond. On December 31, 1864, the department instructs him to convert the bond into legal tender notes, and deposit to the credit of the United States. Upon these facts the referee came to the conclusion that the determination of the secretary of war was a judicial determination, and binding upon the county of Livingston. We insist, 1st. The secretary of war had no jurisdiction to inquire into anything except whether Clark was eighteen years of age when he enlisted; if not, whether he had the consent of his parents; and whether he had repaid his bounty to the party paying it. The question of jurisdiction of any tribunal over a subject upon which it has assumed to act, can be raised at any time. If it has not jurisdiction, its judgment or determination is absolutely void. (*Bigelow* v. *Stearns,* 19 *John.* 39. *Bloom* v. *Burdick,* 1 *Hill,* 130.) 2d. The county of Livingston was not a party to the determination made by the secretary of war, and had no notice of the proceedings before him. It was not in a position to attack the judgment directly by appeal, or *certiorari,* or in any way except by defending this action.

The defendant finds no fault with the order discharging Clark. The proceedings for his discharge were necessarily *ex parte*, and the proof was sufficient to justify the order; but when more than a month afterwards, the department assumed to appropriate the bounty to the use of the government, in violation of the proviso of the act of congress, without notice to the county, that order cannot be set up as an adjudication in bar of the defense interposed.

VII. The second conclusion of law contained in the report of the referee, " that Clark, although a minor, was enabled to contract with the government for his services, and the ability to contract carried with it the incidental right to receive and dispose of the bounty which was offered as an inducement to the agreement," is erroneous. If the proposition had been qualified, so as to apply to the contract of a minor eighteen years of age, it would be correct. But applied to the case of Clark, who was less than seventeen, it is not true. There is no law authorizing a minor under eighteen to enter into this or any other contract; and the same act of congress under which Clark was discharged, expressly forbids the enlisting of a person under that age, and renders the officer who does it, knowingly, liable to an indictment for a misdemeanor.

VIII. The other conclusions of law of the referee are also erroneous, for the reasons stated in the foregoing points.

IX. To uphold the transaction disclosed in this case, would be to sanction an act, and establish a precedent, against public policy, and invite fraud and corruption on the part of public officers.

*Scott Lord*, for the respondent.

I. The bond in question was duly made and issued by the defendant. 1. The power to issue the same was conferred by chapter 8 of the laws of 1864, and other statutes.

Blake *v.* Supervisors of Livingston County.

2. The conferring of such power was not in conflict with the constitution of the United States, which gives the power of carrying on war to the general government, but rather in aid thereof. 3. Neither was the conferring of such power an infringement of the prohibition against taxing property for private use. The act referred to does not authorize the raising of money to relieve men actually drafted, but to prevent a draft.

II. The bond in question was a bounty or gift, and was the property of Peter Clark, notwithstanding he was a minor; and his parol authority to assign it was sufficient. (*Story on Cont.* § 129. *Caughey* v. *Smith*, 50 *Barb.* 351. *Worrall* v. *Munn*, 5 *N. Y.* 229. *Wood* v. *Auburn and Rochester R. R. Co.*, 8 *id.* 160.)

III. All the conditions prescribed in the resolutions of the defendant being fulfilled, the bond became obligatory upon it as a perfected instrument. 1. Such resolutions authorized the issuing of the bond and its receipt by the supervisor of Springwater for the object stated therein. 2. Peter Clark volunteered into such military service, was duly enlisted and mustered, and became in all respects a soldier subject to the articles of war; and thereupon such bond was issued to him at the request of the supervisor of Springwater, and by him delivered to the clerk of the board of enrollment, unconditionally, for the use and benefit of the obligee, said Peter Clark, as the consideration, *pro tanto*, for his enlistment into such military service, and the relief thereby given to the town of Springwater and county of Livingston. 3. The delivery to the clerk of enrollment was known to, approved, affirmed, adopted by said Peter Clark, such obligee, in his assuming the control thereof, and directing its disposition.

IV. The infancy of Peter Clark cannot be set up by the defendant to avoid the payment of its bond. 1. Because no such defense is interposed in the answer. 2. The defendant did not make the age of the recruit a condition

of its liability, but only that he should be mustered into such military service, which, the defendant well knew or is legally chargeable with knowing, would require an examination on the part of the United States as to such question. 3. If such recruit had continued in the military service for the period of his enlistment, would it be claimed that the defendant could insist upon his non-age as a defense? Certainly, until he was discharged and the credit was withdrawn, the defendant was receiving all it had bargained for. 4. Should it be claimed that such infancy was unknown to the government, and therefore a fraud upon it, the answer is, *first,* that no such issue is presented in this case, and *second,* had it been, the presumption would be, that the recruit was honestly mistaken. This must have so appeared to the secretary, or else he would have been held to service on the principle of an estoppel; but it is sufficient to say that the defense here is not that the bond was obtained by false pretenses, but that the recruit was discharged from service. In any point of view the county of Livingston has nothing to do with the question of fraud, in itself. Had the government rejected the recruit on that ground, and required from the town another recruit in his place, then this rejection and failure of consideration might be pleaded.

V. The plaintiff in this action duly acquired the title to such bond. I. By the direction of the obligee, as proved by both the provost marshal and clerk of enrollment, the bond was assigned to William T. Remer, and if there was no other evidence in the case, the title of the plaintiff would be unquestionable; but the object of the assignment was to give the secretary of war possession of the bond, with the right to dispose of it as might be just and proper, when the application for the discharge of the recruit, made by his father, had been finally disposed of. The assignment is dated November 1, 1864, and was forwarded to the secretary of war, with notice that the bond

was in the possession of the provost marshal, on the 21st of October thereafter. 2. But what has the defendant to do with this question? The title in the plaintiff is made perfect by the absolute assignment by William T. Remer to him, dated the 20th day of July, 1865; the defendant has not pleaded any title in the United States; and the allegation of interest in the United States, contained in the complaint, is coupled with the allegation that such bond has been duly assigned to the plaintiff, who paid a full and valuable consideration therefor, as the facts of the case show. 3. It is alleged that a minor cannot make a valid assignment. We inquire what has the defendant to do with this question? Infancy is a personal privilege; the assignment is voidable only at his election. The defendant cannot make the election for him; and if it could, it has not attempted it, for such defense and election can only be made by answer. The answer in this case contains no such defenses. 4. The enlistment bound the volunteer until discharged by the secretary of war, who was authorized by the 20th section of the act of the 4th of July, 1864, to hear and determine upon the application, and direct the performance of certain conditions precedent. The act of congress authorizing the enlistment of minors as volunteers, enables them to contract with the government, and, as necessarily incident to that contract, to receive and dispose of the bounty which induced the agreement. 5. Peter Clark, the assignor, came to his majority more than a year before the trial of this action, and there is no evidence of any act or intention on his part to disaffirm such assignment; and the presumption is that he ratifies and affirms it. (*Story on Cont.* § 58. *Slocum* v. *Hooker*, 13 *Barb.* 536. *Taft* v. *Sergeant*, 18 *id.* 320. *Jones* v. *The Phœnix Bank*, 8 *N. Y.* 228.) 6. The 20th section of the act of congress passed February 24, 1864, and the 5th section of the act of July 4, 1864, pages 10 and 379 of the Statutes at Large for the years 1863 and 1864, pro-

vide that the secretary of war may order the discharge of all persons in the military service, who are under the age of 18, provided such persons " shall first repay to the government and to the State and local authorities all bounties and advance pay which may have been paid to them, anything in the act to which this is an amendment to the contrary, notwithstanding." And the act of July 4 provides, " such person so enlisted or recruited shall be immediately discharged upon repayment of all bounties received." It has been claimed by the defendant that the statute makes the repayment of the bounty to the town of Springwater a condition precedent to the discharge of the recruit. 7. The first answer to this position is, that the proviso is a limitation of the power of the secretary of war in discharging such recruits, so far as to prevent such discharge while the recruit retains the pay, bounty, and other benefits received upon his enlistment and muster. It gives no right of action to the government, State, or local authority to recover such bounty or pay. Even if the defendant could reclaim the bond, by virtue of the statute, it cannot set up the proviso by way of defense. But the defendant can do neither, for the only object of the statute is to prevent the secretary from discharging such recruit until he releases or restores to the proper party the benefits he has received. 8. This statute, like all others, is to be governed by the intent. The town of Springwater and county of Livingston had been forever discharged from furnishing any recruit in the place of Peter Clark, by his enlistment, acceptance and muster; there was no provision of law by which, after his discharge, the town of Springwater could be required to fill his place; the loss was to the general government; his bounty and pay belonged to it; and with it the government could furnish another; these were its indemnity. The whole criticism of the defendant is based upon the word *repay*. If the word *pay* had been used, no question could arise but that such bounty was intended for the

Blake *v.* Supervisors of Livingston County.

party entitled to it on such discharge; but the intent is mightier than the syllable *re;* besides, *repay,* and similar words, are often used in the sense of the word pay. It was not necessary that the discharge should recite the performance of such condition; the fact of performance is sufficient. 9. But if it should be held that the word *repay* requires the formula of restoring to the town, then we answer, *first,* the injustice of paying to such town that to which it had no claim, and for which it had received a full consideration, would require the application of the principle of subrogation, which is always applied as against such merely colorable rights when demanded by what is just and equitable; *second,* the secretary of war, acting under such statute judicially, had the right to decide that the government in this regard had, under the circumstances, acquired the rights of such town. 10. If the secretary granted the order illegally, and in the face of positive prohibition, it was a nullity, and the recruit was rightfully in such military service during the period for which he enlisted. 11. If the discharge of the recruit was operative and valid, then the action which placed such bounty where it equitably belonged, was a substantial compliance with such conditions. 12. The action of the secretary of war was judicial, and if erroneous, cannot be corrected in this action. The facts were all before him—the non-age of the recruit; that the bond was paid to him for the benefit of the town of Springwater; that it was not entitled to it. It had received credit for the recruit, who had been in service, at the expense of the government, for over a sixth of the time for which he had enlisted; the time for furnishing volunteers had expired; the obligee was one of the quota which enabled such town to escape the conscription, and received in this way the consideration for which the bond was given. The discharge was on the 9th of November, 1864. The government thereby lost the soldier, his pay, clothing and services; the town lost

nothing.    13. At the time of his discharge, this bond had been assigned by him, and was actually in the treasury of the United States.    Under these facts, the secretary decided to discharge such recruit, thereby adjudicating that the bond the county paid to him had been repaid to the authority entitled to it.    14. The order, therefore, to the provost marshal to sell the bond, and under which the interest of the United States was sold to the plaintiff, for the consideration of $720, perfected his title. 15. The application for the minor's discharge was completed the 19th day of September, 1864, and forwarded September 22, of the same year, by the provost marshal, certifying that the bond was then in his possession.

VI. The order relied upon by the defendant below, that bonds should not be received by provost marshals, is dated November 20th, 1864, two months after the deposit of this bond.    If otherwise, the subsequent approval of the government would heal the difficulty.

VII. The case of *Richardson* v. *Crandall* (47 *Barb.* 335) does not apply, either in its facts or reasoning, to the case before the court.    1. In that case the bonds were exacted in consideration of desertion, and from a party other than the deserter.    2. The secretary of war had no power so to punish a party for the desertion of another, and the forfeiture sought to be enforced was punishment.    3. Had the deserter owned such bonds, they might have been forfeited, under the military authority, and uniform practice by which the pay and allowances of deserters has been forfeited.    4. In the case before the court, the secretary of war exercised an authority which has been exercised since the organization of armies.    In receiving the bond tendered and assigned by Peter Clark for the use and benefit of the United States, he received that which was entirely competent for the assignor to give, and for him to receive. In any point of view, he made but a judicial error, which cannot now be corrected, and should not be, if the power

Blake *v.* Supervisors of Livingston County.

existed to correct it, for the county and town in question received full value for such bond, as much as though the recruit had served his full term, or died or deserted, His discharge has made no difference with "the local authorities."

VIII. The exception taken by the defendant, to the proof of parol authority to assign the bond, was not well taken.   Parol authority to assign a bond is sufficient.

IX. The plaintiff can recover, because the bond is negotiable, and he a *bona fide* purchaser. (*Brainerd* v. *N. Y. and H. R. R. Co.*, 25 *N. Y.* 496.)

*By the Court*, JOHNSON, J.   The action upon the obligation in question is to be governed, in all respects, by the rules applicable to actions upon commercial paper.   The obligation, though called a bond, is payable to "Peter Clark, or to his certain attorney, executors, administrators or assigns," and belongs to that class of obligations which has been expressly held, in this State, not to be specialties, but in the nature of. commercial paper, negotiable by delivery, under an assignment in blank. (*Brainerd* v. *New York and Harlem R. R. Co.*, 25 *N. Y.* 496, *and cases there cited.*)   The decisions to that effect, in this State at least, are uniform, and the rule is too well settled to admit of doubt or .challenge.

That this instrument had a valid inception, and became and was a binding and subsisting obligation in the hands of the payee, against the county of Livingston, before he assigned it, is clear beyond controversy.   It was made and delivered to the town of Springwater, in that county, to enable the town to fill its quota in the United States service.   The payee enlisted for that town, was mustered into the service in the usual manner, and received the obligation as his bounty, which such town had offered; the town was credited with the recruit; and the transac-

action between the town and the government of the United States was closed as to that recruit, and does not appear to have been opened afterwards, as between the two bodies. At least it is not shown to have been opened, and there is no presumption that it ever was opened.

The credit was never withdrawn by the general government, but remained, in satisfaction of the requisition, *pro tanto.* This being the case, I do not see what defense is open to the defendants, except want of title in the plaintiff, to the obligation.

It does indeed appear that the payee was discharged from the service, by the government, and did not serve out any considerable portion of the term for which he enlisted. It also appears that he was discharged upon the application of his father, on the ground of want of proper age for the service, which the recruit had misrepresented. This was a question entirely between the parent of the recruit and the government, as to which had the better claim to the person and services of the recruit. It was a matter, so far as I can see, that did not in the least concern either the county of Livingston or the town of Springwater, in a legal point of view, unless they were in some way injured by it.

If the general government, acting voluntarily, or by compulsion of law, discharged the recruit, and elected, as seems to have been the case, to take and retain what was paid to him, by way of compensation or bounty, for his enlistment, in consideration of such discharge, it is impossible to see how the county or town has been legally damnified. If the government had rescinded the transaction, and instead of taking the bounty, or any part of it, had called for another recruit from the town, in the place of the one discharged, in order to fill the measure of its quota, it might have been different. But it did not. It discharged the recruit, but it kept what had been paid to

Blake *v.* Supervisors of Livingston County.

him instead, and thus affirmed the mustering in of the recruit, and acknowledged performance to that extent, by the town of Springwater, of its obligations. There has been, therefore, no failure of the consideration of the obligation, whatever. Nor has its validity been in any respect destroyed, or injured by reason of the transactions or dealings between the recruit and the government. The disappointed wishes, feelings and expectations, of the patriotic citizens of the county of Livingston, or of the town of Springwater, to aid the government in its struggle, by the strong arm of another soldier, are of no importance whatever, in a legal point of view. The obligation had a valid inception, and its validity has never been injuriously affected, since.

The only question that remains, therefore, is that of the plaintiff's title. This he derives mediately from the payee himself. It is said, in behalf of the defendants, that the payee, when he made or authorized the transfer, was an infant, incapable of making or authorizing an assignment. The conclusive answer to this is, that it does not concern the defendants. The transfer is good as against all the world, except the infant himself. It is a right and privilege personal to the infant, which no third person can exercise for him; and as long as he does not object, the obligor cannot.

The recruit, and payee of the obligation, is now over twenty-three years of age, and as he does not repudiate the transaction, the law presumes that he acquiesces, and has ratified it. There is no pretense that the plaintiff obtained possession or title by fraud on his part. He took by assignment from the apparent owner, and for a valuable consideration paid; and that is all that is material, and more than was necessary for him to prove. The suggestion that the recruit and payee obtained the obligation, in the first instance, by fraudulently misrepresenting his age,

has no force or foundation. No such defense has been alleged, and no such fact is proved. The judgment is therefore right, and must be affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]