THE PEOPLE *vs.* JAMES H. INGERSOLL, impleaded with others.

Money borrowed upon the credit of county bonds which the county was authorized by statute to issue and is legally liable to pay, becomes the property of the county the moment it reaches the hands of the county treasurer, or is deposited and placed to his credit as such treasurer, in bank.

The chamberlain of the city of New York being, *ex officio*, treasurer of the county of New York, the receipt of money by him, as such treasurer, is a receipt of it by the county.

And where moneys so placed in the county treasury are, in pursuance of a corrupt, fraudulent and unlawful combination and conspiracy to that end, by individuals, drawn out of the treasury, and fraudulently divided between such persons and others, an action will lie against such persons, to recover the moneys back, and damages for the fraud perpetrated upon the county.

In such a case, the *county*, being the owner of the property fraudulently obtained, is the "real party in interest," and the proper party to bring the action.

The *people of the state*, by their Attorney-General, cannot maintain an action against the confederates to recover back the moneys so fraudulently taken and converted, or to recover damages for the fraudulent conspiracy and conversion.

No complete determination of the controversy in respect to such moneys, or damages, can be had, to which the *county* is not a party.

Power or right of the court to order an amendment of a complaint, upon *the trial.*

DEMURRER, by the defendant Ingersoll, to the complaint.

*Francis C. Barlow* (Attorney-General,) *Charles O'Conor, Wm. M. Evarts* and *W. H. Peckham,* for the plaintiffs.

*E. W. Stoughton, D. D. Field* and *Elihu Root,* for the defendants.

HARDIN, J. On the 26th day of April, 1870, the defendant Hall was mayor of the city of New York, the defendant Connolly was comptroller of said city, and the defendant Tweed was president of the board of supervisors of the county of New York. On that day, the legislature passed an act entitled "An act to make further provision for the government of the county of New York," which contained, in its 4th section, the following, viz.:

"§ 4. All liabilities against the *county* of New York incurred previous to the passage of this act *shall* be audited by the *mayor,* comptroller and present president of the board of supervisors, and *the amounts* which are *found* to be due *shall* be *provided* for by the issue of *revenue bonds of the county of New York,* payable during the year 1871, and the board of supervisors *shall* include in the ordinance levying the tax for the year 1871, an amount sufficient to pay *said* bonds and the interest thereon. Such claims shall be paid by the comptroller to the party or parties entitled to receive the same, upon the certificate of the officers named herein." (*Laws of* 1870, *p.* 878.)

In October, 1871, this action was brought by the Attorney-General, and an order of arrest for "deceit and fraud" was issued by Justice Ingraham, holding the defendant Tweed to bail in the sum of $1,000,000.

In December, 1871, a motion was made, at a Special

Term held by Justice Learned, at Albany, to reduce the amount of bail required of Tweed, and for further relief. In the opinion delivered by Justice LEARNED upon denying the motion, he refers to certain statements then in the complaint, in respect to collusions with the defendant Tweed, and adds that, "The question whether or not the plaintiffs can maintain such an action is one which needs thorough argument, and careful thought, for a correct decision. It ought not to be passed upon, on this motion, which is, as it were, an incidental proceeding in the action." That learned justice therefore refused, and properly refused, to pass upon the right of the plaintiffs to maintain the action as it was presented by the complaint, at that time. The order made by Justice Learned was affirmed at General Term, in February, 1872, in so far as the question of the plaintiffs' right to maintain this action is concerned, it must be assumed, in the absence of any opinion, without examining the question made, as to the plaintiffs' right to maintain this action.

In June, 1872, the defendant Tweed demurred to the complaint, and the argument of the questions presented came on for consideration, at a Special Term of this court held at Albany by the late Justice Hogeboom, who, after partial argument by counsel representing the respective parties, *pro forma* overruled the demurrer, and gave leave to the defendants to answer.

From that order an appeal was taken by the defendants, Tweed and Connolly, to the General Term, in the 3d Department. That appeal was heard in July, 1872, and in September the decision made at Special Term was, by a divided court, sustained, MILLER, P. J., and POTTER, J., delivering opinions for affirmance, and PARKER, J., in favor of reversal. (*See* 13 *Abb.*, *N.S.*, 25 *to* 103.)

Subsequently to that decision, upon a motion made

by the defendant Ingersoll, the 4th, 5th and 6th divisions of the complaint were stricken out.

The defendant Tweed made a motion to change the place of trial from the county of Albany to the county of New York. That motion was granted, at a Special Term held by Justice INGALLS, who held that the complaint charged upon the defendant Tweed "misfeasance and malfeasance performed by virtue and within the scope of his authority as an officer," as well as an abuse of the confidence which the law reposed in him, and, therefore, the 124th section of the Code applied, and required the venue to be changed. (*See opinion of Ingalls, J.; also Brown* v. *Smith,* 24 *Barb.,* 419.)

The action brought by the *Board of Supervisors of New York* v. *Tweed,* (and one of the actions referred to in the original complaint in this action,) was heard at a Special Term in New York held by Barrett, J., upon a demurrer of the defendant to the complaint, and the demurrer was overruled. In the opinion of BARRETT, J., it is stated that the opinions delivered in this case by the General Term of the Third Department were "fully considered," and that, after such consideration, he was of the opinion that the General Term in the Third Department *had not* decided that the action in behalf of the supervisors of New York would not lie, and that the solution of the question as to whether the supervisors' action would lie or not was not necessary to the decision of the questions then before the Third Department, General Term. (13 *Abb., N.S.,* 156.)

An appeal was taken from the decision of BARRETT, J., upholding the supervisors' action, which was heard in November, 1872, in the First Department, and the decision of the Special Term was unanimously upheld.

The opinion of the First Department was delivered by its learned and experienced presiding justice, INGRAHAM; in which he clearly and succinctly states his views upon the question involved in the supervisors' action.

He says : "We consider the statute relating to boards of supervisors as authorizing such actions, and *entertain no doubt* as to the power of the plaintiffs (the supervisors of New York) to sue for money due to the county, which, in the complaint, was averred to be the property of the *county.*

"As to the decision of the court in the Third Department, in the action brought by the people, *we cannot* be bound by it on this question, as the expression of that opinion was not necessary to the decision of that case, and *especially* as such decision was rendered by a *divided* court.

Even the two judges who concurred in sustaining that action disagreed in the reasons which they assign for arriving at the same conclusion of law.

In the complaint in that case it was also averred that the suit of the supervisors was collusive, and that was admitted by the demurrer.

Our decision, therefore, is, that this action may be maintained by the board of supervisors." (13 *Abb.*, *N.S.*, 158, 9.)

The decision last granted being in this department, and being later in point of time, and by a unanimous court, is entitled to respect, and stands as controlling authority upon the questions involved therein.

It must be assumed to be conclusively settled, by authority, that the board of supervisors of the county of New York " have the right to sue for money alleged to have been taken from the county treasury and misapplied."

This proposition is in harmony with the results reached, and the very able opinion of FOLGER, J., in *Newman* v. *Supervisors of Livingston County*, (45 *N. Y.*, 676.) The opinion states "there can be no doubt then, that the statute law contemplated in a county so much of *corporate entity* as could own and hold real and *personal* property ; could incur debts and liabilities ;

*could have* and receive money into and pay it out from its own treasury, and keep account thereof; could have controversies with an individual and become liable to action from him, and be cast in judgment therein, under suits and proceedings like those against other corporations."

The complaint alleges that the fraudulent acts and wrongs complained of, (1,) were done under an act "to make further provision for the *county* of New York;" (2,) that *all* liabilities against the *county* previous to April 26, 1870, should be *audited* by the mayor, comptroller, and the then president of the board of supervisors of said county; and that the amounts found due should be *provided* for by the issue of revenue *bonds of the said county*, payable during the year 1871 ; and that the board of supervisors should include in the ordinance levying the tax for 1871 an amount sufficient to pay *said* bonds. That the comptroller caused to be issued bonds as prescribed by the act, (to wit, county bonds,) and obtained from *bona fide* purchasers thereof, prior to the 5th day of August, $6,312,000, which sum was deposited in the National Broadway Bank of the City of New York, to the *credit* of an account therein, kept by the chamberlain of the city of New York, *as* county treasurer of said *county*.

The form of the bonds is given, and they are shown to be executed in behalf of, and in the name of the *county*, and *the county* is the *obligor*.

It is further alleged that the moneys so deposited were fraudulently drawn out of the said *bank* as stated in particular. That said claims or liabilities were never audited or examined by said board of auditors. A detailed statement is made of the manner in which, by means of false, fictitious and sham accounts and claims, the moneys were by the defendants' fraudulent acts, and "fraudulent and unlawful combination and conspiracy obtained from said bank, and so being obtained, were

fraudulently divided between the defendants and sundry other persons to the plaintiffs unknown." And then follows a demand of judgment, viz.: "And the said plaintiffs therefore demand judgment against the said defendants for the said sum of six millions three hundred and twelve thousand dollars, with interest thereon from the first day of September, 1870, and their costs."

The money was obtained in virtue of the statute, and the bonds having passed into the hands of *bona fide* holders, became binding upon the county. (*Delafield* v. *The State of Illinois*, 26 *Wend.*, 191; *S. C.*, 2 *Hill*, 160. 13 *N. Y.*, 625. *Brainerd* v. *New York and Harlem R. R. Co.*, 25 *N. Y.*, 496. *Blake* v. *Supervisors of Livingston County*, 61 *Barb.*, 169. *Lindsley* v. *Diefendorf*, 43 *How.*, 358, 359, *opinion by Hardin, J.*)

The bondholders had ample remedies to enforce out of the county payment of the bonds. (*Buck* v. *City of Lockport*, 43 *How.*, 361. *Blake* v. *Supervisors of Livingston Co.*, 61 *Barb.*, 149.) The money having been borrowed upon the credit of the county bonds, and the county having become indisputably bound to repay the same, to the lenders, the money thus received upon the bonds of the county and its credit, the MOMENT it *reached the chamberlain's hands* or was deposited and placed to his credit as treasurer of the county, in the Broadway Bank, became and was the money of the county. The chamberlain is *ex officio* treasurer of the county. (*People* v. *Stout*, 23 *Barb.*, 346.) As was said by FOLGER, J., in *Newman* v. *Supervisors of Livingston Co.*, (*supra*): "The receipt of that money by the treasurer was a receipt of it by the county."

The principle applied by GROVER, J., in *Bank of the Commonwealth* v. *Mayor &c. of N. Y.*, (43 *N. Y.*, 188,) where moneys had been raised by taxation in part for city purposes, and were paid for county purposes, may be invoked to sustain this view. That learned judge says: "It further appears from the statutes, that a por-

tion of the tax imposed was for the use and benefit of
the defendant (the city,) and another portion for the
county. When the entire tax was paid to the chamber-
lain, *he must be regarded as receiving that portion im-
posed for the defendant, as its treasurer, and the bal-
ance as county treasurer.* For the latter, the defendant
(the city) cannot be held responsible, as the money can-
not be regarded as ever having been received by it;
*but the former was in fact so received by it.*" (43
*N. Y.*, 188.)

The moneys being in the hands of the chamberlain as
*ex officio* treasurer of the county, and therefore belong-
ing to the county of New York, were properly, under
the act, *applicable* to the payment of the debts and lia-
bilities of the *county of New York;* especially such as
should be audited and certified in virtue of, and in con-
formity with, the provisions of the act of the legislature,
of 1870. The comptroller was authorized to pay "such
claims to the party or parties entitled to receive the
same, upon the certificate of the officers named herein."
He was made the agent of the county to pay or disburse
the money of the county. The act of 1870 conferred new
and additional duties upon him, and duties to be dis-
charged virtually in behalf of the county. He became,
*quoad* these *duties*, the agent or officer of the county.
(17 *N. Y.*, 64.)

But instead of complying with the requirements of
the law, it is alleged that he, in a fraudulent combina-
tion and conspiracy with the other defendants, fraudu-
lently took to himself and delivered or caused to be
delivered to the other defendants the funds or moneys
aforesaid of the *county*, which had thus been obtained
upon the *credit of the county*, by means of the revenue
bonds issued in behalf of the county as above stated.

The complaint alleges that the accounts for which
warrants were issued and delivered by the defendant
Connolly, as comptroller, were "all false, fictitious and

fraudulent, and were made up and prepared by fraud and collusion," between Watson, Garvey, Ingersoll and Woodward, and the warrants were wrongfully and fraudulently issued for the payments of such pretended accounts out of the moneys so in said bank "pursuant to a corrupt, fraudulent and unlawful combination and conspiracy to that end, by and between the said Tweed, Watson, Garvey, Ingersoll and Woodward, agreed to be divided, and were divided between Ingersoll, Garvey and Tweed, and sundry others."

There are other allegations of details, entering into the fraudulent schemes of the defendants, showing more at large the manner in which they consummated their frauds, fraudulent schemes and conspiracy upon the treasury of the county, and obtained the said moneys of the county.

From the foregoing analysis of the complaint, as well as from its entire scope, it appears that the action is to recover back from the defendants the moneys so fraudulently obtained by them ; or to recover damages for the fraud so perpetrated upon the county of New York.

It is to recover damages for a wrong perpetrated ; not to prevent the commission of a wrong.

It will be assumed, upon the abstract of the complaint, and the authority already quoted, and the views expressed, that a good cause of action is stated against the defendants, in behalf of the county, and that it exists, complete and perfect.

The next inquiry that arises is — have the plaintiffs, the people, a right to maintain this action ; or, in other words, can the people—the state of New York—by their Attorney General, maintain this action to recover back from the defendants the moneys so wrongfully taken ; or recover damages for the fraudulent conspiracy, combination to defraud, and the consummation thereof by the means already alluded to, thus converting to their own use the $6,312,000 stated to have been wrongfully taken by the

defendants out of the hands of an officer of the county, out of the possession, and from the county of New York?

At the outset of all consideration of this question, attention must be fixed upon the mandate of section 111 of the Code. That section, in terms, declares that "Every action must be prosecuted in the name of the *real party* in INTEREST" except as otherwise provided in section 113.

Section 113 permits "an executor or administrator, a trustee of an express trust, or a person expressly authorized by *statute*," to sue without joining with him the person for whose benefit the action is prosecuted.

There is, in the section first quoted, the absolute requirement that the action shall be in the name of the real party in interest; and the section, with all the absolute character of its requirements, appears to embrace all actions not coming within some of the limited and restricted terms of section 113. No plausible or sound reason can be suggested which brings this case within the terms thereof.

Reference must be had to section 111 for the rule to be applied to this case. The peremptory requirement of the section calls for a demonstration that the people — the state — is the "real party in interest."

Taking the result already stated — that the moneys taken by the defendants wrongfully from the county, and the damages sustained by reason of the taking of the moneys, *belong to the county*, and applying it to the requirements of this statute, there would seem to be little room to doubt that the *county of New York* is the "real party" in interest; and being so, it would seem to follow, as a necessary consequence, that the "people of the state," the present plaintiffs, cannot, in any just and statutory sense, be considered "the real party in interest." Certainly not, in a sense which can answer the requirements of the section of the Code quoted.

The view just expressed is not without authority directly in point and clearly supporting it. (*The People* v. *The Mayor of N. Y.*, 27 *How.*, 34.)

The case of *The People* v. *Booth et al.* (32 *N. Y.*, 397,) bears upon and supports the view herein stated. That action was brought "to restrain the defendants from intermeddling with the property pertaining to the fire department of the city of New York." The plaintiffs alleged that the property belonged to the city of New York, and that the defendants were wrongfully seeking to obtain possession of it without the consent of the corporation of New York. The court *held* that "The people of the state, to maintain an action, must show an interest in the subject of the litigation."

It was there tersely said in the able opinion of DAVIS, J., that "the people of the state, like all other parties to actions, must show an interest in the subject matter of the litigation, to entitle them to prosecute a suit and demand relief. This they have utterly failed to do, in this case, and for that reason the complaint ought to have been dismissed by the court below." That case was afterwards, in 1869, referred to in the opinion of BALCOM, J., in the *People* v. *Clark*, (53 *Barb.*, 171,) and the rule and reasoning stated and approved. The *People* v. *Clark* was an action brought to restrain proceedings under an act of the legislature, for the purpose of bonding the town of Lebanon.

BALCOM, J., says: "All the people of the state are not interested in the question whether the taxable inhabitants of the town of Lebanon shall issue bonds of their town to aid the construction of the New York and Oswego Midland Railroad. And this action cannot be maintained by them by their Attorney-General, unless it is authorized by the statute." (3 *R. S.*, 762, § 39, *5th ed.*)

The spirit and effect of section 111 has been declared too often and clearly to be questioned or doubted. (*See*

*opinions of Allen, J., and of Wright, J., 25 N. Y., 627, 632; 13 Wallace, 502.)*

The complaint does not, in express terms, allege in the plaintiffs any interest in, or title to, the moneys taken and converted by the defendants. Nor do the facts constituting the plaintiffs' alleged cause of action make a case showing the plaintiffs to have the legal title thereto ; or that the plaintiffs are the "real party in interest." But on the contrary, the facts constituting the cause of action against the defendants establish very satisfactorily and conclusively that the county of New York is "the real party in interest."

In this connection it may not be inappropriate to add that it is now well settled by authority, that no taxpayer can maintain an action to redress the wrong done by these defendants, or to recover the moneys fraudulently taken by them from the county in the manner stated in the complaint, and admitted for the purposes of this demurrer by the defendants. (*Doolittle* v. *Supervisors of Broome County*, 18 *N. Y.*, 155. *Roosevelt* v. *Draper*, 23 *id.*, 318. *Phelps* v. *City of Watertown*, 61 *Barb.*, 121.)

Having reached the conclusion that the county of New York owned the money fraudulently absorbed by the defendants, and is entitled to recover back the same, and to recover damages by reason of the wrongful acts of the defendants, stated in the complaint, it is manifest the plaintiffs cannot maintain this action upon the principles of the English cases quoted and reviewed in the able and exhaustive argument of the plaintiffs' learned counsel, before the court, and so fully examined by the learned judges who delivered the prevailing opinion in the 3d Department; unless they shall amend the complaint, and make the county of New York either a party plaintiff or a party defendant. (*Robinson* v. *Smith*, 2 *Paige*, 222. *Cunningham* v. *Pell*, 5 *id.*, 613. *Code*, §§ 117, 119.)

Certainly a complete determination of the controversy in respect to said moneys or damages, cannot be had in an action to which the county of New York is not a party. (*Code*, § 122.) If it were conceded that the plaintiffs are interested in a remedy which should effectuate a *return* of the money taken from the treasury of the county, analogous to the relief in the case of the *Attorney-General* v. *The Mayor of Dublin*, (1 *Bligh*, *N.S.*, 313,) still, it would be necessary that important amendments should be made. The facts stated do not bring the case within the reasoning of the *Attorney-General* v. *The Mayor of Dublin.* Especially is this true in respect to Ingersoll, who was not a public officer. The complaint is not framed for equitable relief against him. Only a case at law, asking for a judgment at law, is stated against him.

It was suggested by the learned counsel of the plaintiffs, upon the argument, that if such an amendment should be found necessary upon the trial, the court might, upon *the trial*, order the amendment. The power or right of the court, upon trial, to order an amendment which should change the scope of the action, or the parties necessary to maintain the action, is doubtful, if not wholly unauthorized. In *Davis* v. *Mayor &c. of New York*, (14 *N. Y.*, 506,) an amendment *upon the trial*, bringing in the Attorney-General as plaintiff, was made, and judgment then directed for the plaintiffs. It was subsequently reversed, and the amendment held to have been error. (*See Union Bank* v. *Bassett*, 3 *Ab.*, *N.S.*, 360. *Ford* v. *Ford*, 53 *Barb.*, 525. *Nosser* v. *Corwin*, 36 *How.*, 540. *Bailey* v. *Johnson*, 1 *Daly*, 61.) The last case holds that a change in the form of the action will not be allowed on the trial.

The learned senior counsel for the plaintiffs, in his argument, urges that this court should respect and follow the decision made by the majority of the judges in

The People *v.* Ingersoll.

the 3d Department when the demurrer of some of the defendants was considered.

The principle involved in the maxim "*stare decicis et non quieta movere,*" was referred to, and must be accepted and applied to this case, in reaching a result. What is the effect of its application here?

I. When the General Term decided the demurrer of the other defendants the complaint contained many allegations not now therein, and allegations upon which reliance was placed by the judges delivering prevailing opinions.

II. It was then assumed that the county of New York could not maintain an action to recover the moneys taken by the defendants; and that assumption has been completely taken away by the unanimous opinion of the General Term in this district in the case of the *Supervisors* v. *Tweed*, (*supra;*) and therefore the reasoning based upon that assumption has no force here, as an authority.

III. The opinions which were delivered as to the other defendants place some effect upon the circumstance that the defendants were holding public offices. Although it is not here considered that this defendant, Ingersoll, is less liable by reason of being a private individual, still that circumstance, as considered in the light of the reasoning in the opinions, lessens the force of the result as an authority. (*Cage* v. *Acton*, 12 *Mod.*, 288. 2 *East*, 469. 5 *Taunt.*, 155.) *Ratio legis est anima legis; mutata legis ratione, mutatur et lex.*

IV. The result in the 3d Department was reached by disregarding, if not by directly overruling, the case of the *People* v. *Miner*, (2 *Lans.*, 396,) in 1868. Since that case was decided, the doctrines thereof have been examined by the same learned jurist who delivered the opinion in 2 *Lans.*, 396, and the principles reaffirmed, by the General Term of the 4th Department, in the

*People* v. *Albany & Susq. R. R. Co.* (5 *Lans.*, 26,) unanimously.

It therefore appears that the cases immediately bearing upon one of the leading questions here involved are in conflict; and therefore this court, even at Special Term, is at liberty, as well as required, to rely upon the force of other cases applicable to the questions involved on this demurrer. Manifestly, such a course can in no just sense be considered as a disregard of the wholesome doctrine of *stare decicis.*

No doubt is entertained as to the liability of the defendant Ingersoll, as well as the other defendants, to respond for the great fraud in which he has been a participant. But his demurrer to the plaintiffs' complaint must be sustained, because the complaint does not state "facts sufficient to constitute a cause of action," in favor of the plaintiffs, the people of the state.

The demurrer of the defendant Ingersoll will be sustained; with leave to the plaintiffs to amend in twenty days, upon payment of costs.

Ordered accordingly.(*a*)

[NEW YORK SPECIAL TERM, March, 1873. *Hardin,* Justice.]

(*a*) *Affirmed* by the General Term in the 1st Department, and the latter decision *affirmed* by the Court of Appeals, after a re-argument. (58 *N. Y.*, 1.) The legislature subsequently passed an act authorizing the people of the state to sue in cases of this nature. (*Laws of* 1875, *chap.* 49.)