THE PEOPLE, &c., Respondents, *v.* DAVID M. MINER, Appellant.

(GENERAL TERM, FIFTH DISTRICT, JANUARY, 1868.)

Neither section 430 nor section 432 of the Code, confers upon the attorney-general, the power to prosecute an action in the name of the people, against commissioners appointed under an act of the legislature, to restrain them from issuing, &c., town bonds, provided for by such act, without performance of the conditions precedent required thereby; nor has he such power at common law.

The attorney-general has the power belonging to that officer at common law, and such additional powers as the legislature has conferred upon him. Per MULLIN, J.

But the only cases in which at common law he was authorized to interfere to restrain corporate action, or was a necessary party to an action for that purpose, were those in which the act complained of, would produce a public nuisance or tend to the breach of a trust for charitable uses. Id.

The case of *Davis* v. *The Mayor, &c., of New York* (2 Duer, 663), commented on and explained, and certain dicta in that and in other cases disapproved, and the cases therein cited, examined. Id.

THIS was an appeal by the defendant from a judgment for the plaintiff entered on a referee's report.

The action was brought under leave obtained therefor in the name of the people, &c., against the defendants, as commissioners, appointed under the act of April 23, 1867 (chap. 581, p. 1561) for the town of Augusta, in Oneida county, for a perpetual injunction restraining them from issuing certain bonds authorized by that act for railroad purposes. The referee reported against the validity of the bonds, on account of the commissioners' failure to take the requisite preliminary steps, under the statute, to authorize their issue, and judgment was entered in accordance with the prayer of the complaint.

*O. S. Williams,* for the appellant.

*Marshall B. Champlain,* attorney-general, for the respondent.

Present—FOSTER, MULLIN and MORGAN, JJ.

The People *v.* Miner.

MULLIN, J.   In the case of *Knox* v. *Miner et al.*, in which an appeal was argued at the last term, from an order dissolving an injunction, I came to the conclusion, that the plaintiff in that case, could maintain an action to restrain the issuing of the bonds, of the town of Augusta, to secure the payment of moneys borrowed, to be applied in payment of stock in the Utica, Clinton and Chenango Railroad Company; and I came to the further conclusion that there was no equity in the complaint, entitling the plaintiff to the relief demanded.

The last mentioned question arises in this case, also, together with the one whether the attorney-general can maintain the action in his own name, or in the name of the people of the State of New York.   It is unnecessary for me to repeat, what I have said in the other case, as to the merits of the action. I shall, therefore, confine myself to the other question, viz.: Whether the people can maintain an action to restrain the issuing of bonds, provided for in the act of April, 1867.

It is too obvious to require argument, that the people, and by the people I mean the State, in its corporate capacity and character, has no manner of interest in the litigation.   Its rights are in no way injuriously affected, and its interference, must be permitted, either, because there is no other person or corporation capable of suing, or because by the practice of the courts the attorney-general, as the representative of the people, is charged with the duty of interfering, in all cases where private persons are held incompetent to sue, and when the rights of the whole people, or any considerable portion of them, are in danger from the unlawful acts, of persons acting, or assuming to act, under color of lawful authority, or otherwise.

I shall proceed to consider whether the attorney-general can maintain this action.

Before the adoption of the Code, there had been no attempt by the legislature, to enumerate the cases, in which the attorney-general might institute suits, or proceedings, for the enforcement or protection, of the rights of the public, or of

individuals. The office of attorney-general had existed several centuries in England before the formation of the colonial government in this country, and his duties were well understood, and quite clearly defined.

Most, if not all, of the colonies appointed attorney-generals, and they were understood to be clothed, with nearly all the powers, of the attorney-generals of England, and as these powers have never been defined we must go back to the common law in order to ascertain them. The attorney-general had the power, and it was his duty:

1st. To prosecute all actions, necessary for the protection and defence of the property and revenues of the crown.

2d. By information, to bring certain classes of persons accused of crimes and misdemeanors to trial.

3d. By "*scire facias*," to revoke and annul grants made by the crown improperly, or when forfeited by the grantee thereof.

4th. By information, to recover money or other chattels, or damages for wrongs committed on the land, or other possessions of the crown.

5th. By writ of *quo warranto*, to determine the right of him who claims or usurps any office, franchise or liberty, and to vacate the charter, or annul the existence of a corporation, for violations of its charter, or for omitting to exercise its corporate powers.

6th. By writ of *mandamus*, to compel the admission of an officer duly chosen to his office, and to compel his restoration when illegally ousted.

7th. By information to chancery, to enforce trusts, and to prevent public nuisances, and the abuse of trust powers.

8th. By proceedings *in rem*, to recover property to which the crown may be entitled, by forfeiture for treason, and property, for which there is no other legal owner, such as wrecks, treasure trove, &c. (3 Black. Com., 256–7, 260 to 266 ; id., 427 and 428 ; 4 id., 308, 312.)

9th. And in certain cases, by information in chancery, for the protection of the rights of lunatics, and others, who are

under the protection of the crown. (Mitford's Pl., 24–30, Adams' Equity, 301–2.)

This enumeration, probably does not embrace all the powers of the attorney-general at common law, but, I apprehend, it embraces all the powers, under which the right to bring this action could or would be claimed. And it is also doubtless true, that in the foregoing enumeration, I have put under separate heads, powers which should be embraced in one, but it is more important, to ascertain the powers of the office than to secure an accurate classification. As the powers of the attorney-general, were not conferred by statute, a grant by statute of the same or other powers, would not operate to deprive him of those belonging to the office at common law, unless the statute, either expressly, or by reasonable intendment, forbade the exercise of powers not thus expressly conferred. He must be held, therefore, to have the powers belonging to the office at common law, and such additional powers as the legislature has seen fit to confer upon him.

There is nothing in the Code, which manifests the intention, to take from the attorney-general any of his common law powers, which under our institutions and laws he could properly exercise. The Code confers on him, no power to enforce trusts for charitable purposes. Illiberal as both the legislature and the courts have been in permitting the creation of such trusts, several have been held to have been legally created, and there is no one but the attorney-general who has the power to institute proceedings in regard to them. It surely, was not the intention of the legislature, to place these trusts beyond the protection of the law, and permit the trustees to appropriate to their own use, property set apart for purposes held to be sacred, in all other countries whether pagan, or Christian. If this power has not been taken away by the Code, it cannot be claimed, that any of the other common law powers, have been taken away, theretofore properly belonging to the attorney-general.

I will now proceed to inquire whether this action can be maintained under any of the powers conferred by the Code.

It is claimed by the plaintiff's counsel, that the power to maintain this action is given by the fifth subdivision of section 430 of the Code, which is in these words, viz.:

" 5th. Whenever it (a corporation) shall exercise a franchise or privilege not conferred upon it by law." .

The first clause of the section, permits an action to be brought by the attorney-general, on leave granted by the Supreme Court, for the purpose of vacating the charter, or annulling the existence of a corporation, other than municipal, whenever it shall be guilty of the five acts, or omissions, enumerated in the section.

The first answer to the proposition of the counsel is, that this action is not one which the attorney-general, on obtaining leave, is authorized to bring. This is not an action to annul the charter of any corporation; it is to declare void, official acts. If the attorney-general has the right, and it is his duty, under this section of the Code, to bring an action, whenever a corporation shall fail to conform, to the provisions of its charter, or other act of the legislature, in the use of its franchise, a large share of the litigation of the State will be transferred to that officer, and he will find himself overwhelmed with duties not hitherto supposed to attach to his office.

It would be unwise, as well as mischievous, to permit this officer, or any other, to intermeddle with the affairs of the private or public corporations of the State, when the stockholders, or others, whose interests are affected are entire *j* competent to protect them.

And nothing could more clearly demonstrate the injustice of the rule, which would take from the individuals who are aggrieved by the illegal acts of corporations, or public officers, and confer upon the attorney-general, or other officer, the power to maintain actions for such injuries, than the consequences which must necessarily follow from the grant of such power. The officers of corporations will soon cease to be guided by the wishes or interests of those for whom they act, but will look to the attorney-general, as the one who

The People *v.* Miner.

alone can punish, and who will, when conciliated, be both able and willing to protect them.

The only remaining ground suggested, on which the attorney-general may maintain this action, is the first clause of section 432, which is in these words, viz. : "And actions ·may be brought by the attorney-general upon his own information, or upon the complaint of any private party offending, in the following cases, viz. :

" 1. When any person shall usurp, intrude into, or unlawfully hold, or exercise any public office, or any franchise within this State."

If the clause in question could be held to apply to such a case as the one before us, it is an essential element of the right of action, that the person proceeded against should have unlawfully exercised a franchise within this State.

I assume, for the purposes of the argument, that the right, or power to borrow money, issue bonds, and subscribe for stock, is a franchise within the meaning of the section in question. The act of 1867 expressly confers upon the commissioners the power to do each, and all of these acts. It cannot be said, therefore, that the commissioners can unlawfully do these acts. The complaint against them, is not that the statute has not conferred the power, but it is that it required the performance of certain conditions, precedent to the right to borrow money, issue bonds, or subscribe for stock ; and these conditions have not been performed.

There has been an attempt at performance, and it may be that there has not been a literal performance of the conditions ; and if not, then it is for the courts to say whether the taxpayers are bound. If not, they have, or should have relief against an abuse of power, or a failure to comply with the provisions of the statute. If nonconformity to the provisions of a statute, prescribing the duties of a public officer, or board, whose duties affect the whole, or some considerable portion of the people, makes it the duty of the attorney-general to intervene, to prevent, or to remedy the wrong if committed, it necessarily follows, that he must

intervene in every case of the kind, unless some special injury is done to some individual, which will entitle him to sue for the protection of his own rights. · It cannot require argument to show that such doctrine ·will produce endless mischief, will leave the people without any adequate protection against abuses of power by public and corporate officers and agents. For these reasons I am of the opinion that this action cannot be maintained under any provision of the Code of Procedure.

The next question for consideration is, whether the attorney-general has the right at common law to maintain the action.

No such power is embraced in the first, second, third, fourth, fifth or sixth of those enumerated above.

It is not pretended that it is within the seventh, which relates to charitable uses.

In support of the proposition that the attorney-general has power at the common law to maintain this action, I am referred to the case of *Davis* v. *The Mayor of New York* (2 Duer, 663), and certain dicta in several other cases decided in this State. The action was brought in that case to restrain the corporation from granting to several persons the right to construct a railroad in Broadway, in said city. An objection was taken that the attorney-general was a necessary party to the action, and the court, after argument, held him to be so, and that without him final judgment could not be entered.

Laying a railroad in a street, without the permission of the legislature, or officer or body having authority to consent to such an appropriation of it, is creating a public nuisance, the attorney-general had the power, and it was his duty to proceed by information in chancery to prevent the nuisance. (*Attorney-General* v. *Forbes*, 2 M. & C., 123.)

The defendants in this case were proceeding to destroy the supports of one-half of a bridge located partly in two counties, in consequence of which all travel over it would have been prevented. The chancellor says if the defendants so execute what they conceive to be their duty as to create or

occasion a public nuisance, this court has an undoubted right to interpose.

In a note to this case, at page 133, is given an extract from the opinion of Lord COTTENHAM in *Frewin* v. *Lewis* (4 M. & C., 249), in which it is said that the Court of Chancery has no power to restrain poor law commissioners and other public functionaries from exceeding the powers conferred on them by law. But it is not said that the power of the court may be invoked by the attorney-general, unless the illegal act, if done, would produce a public nuisance. When it produces this result, and no one individual or number of individuals sustain a special injury, the attorney-general alone can proceed. When individuals sustain a special injury, they may maintain an action alone, or in conjunction with the attorney-general, or the attorney-general may proceed alone.

The decision in *Davis* v. *The Mayor, &c., supra,* may be, and probably is, correct, so far as the question of the propriety of making the attorney-general a party is concerned. But I cannot concur in the numerous dicta contained in the opinion as to the cases in which the attorney-general has the power to maintain actions to restrain or regulate corporate action.

The general rule which DUER, J., extracted from the English cases is this, that when the act of municipal corporations, which is the subject of complaint, affects injuriously the public at large, that is, the entire community over which the corporate jurisdiction extends, the attorney-general is a necessary party to the prosecution of the suit.

I entertain the most profound respect for the ability and learning of the learned judge, but I cannot agree with him that there is any such general rule. I think it will be found, upon an examination of the cases from which he deduces the rule, that they do not authorize the inference, and that there are but two classes of cases in which the attorney-general is a necessary party; one is where the unauthorized act of the corporation will produce a public nuisance, the other

is when it tends to or is a breach of some trust for charitable uses.

Of the cases cited in the opinion of DUER, J., there are several in regard to which a brief explanation is necessary in order that they may be the better understood.

During the reign of the predecessor of the present queen of England, a law was passed by parliament changing the organization of several of the municipal corporations of Great Britain, and amongst others transferring the property of such corporations to an officer designated the borough treasurer, to be held by him, and the income appropriated to certain specified purposes and objects. In some instances the corporations to which the act applied attempted, before its passage, to transfer portions of their property to third persons, to be by them held in trust for certain purposes to which it could not be applied under the proposed act of parliament. The act provided that certain officers in the old corporations who were entitled to salaries or other emoluments of their offices, should not be elected or appointed to the same or similar offices in the new organizations.

Having premised this much as to the act referred to, I will now proceed to examine the cases arising under it cited by DUER, J.

In the *Attorney-General* v. *Aspinall* (1 Keen., 513), the information was filed for the purpose of setting aside a mortgage and an appropriation of money raised by the corporation of Liverpool to endow certain clergymen officiating in that city, made by the old corporation, after the passage of the act above mentioned, and before the election of officers under the new organization. The defendant demurred. The master of rolls allowed the demurrer, holding that the old corporation had the right to make the appropriation, it being for the benefit of the inhabitants. But on appeal to the lord chancellor, the decree of the master of rolls was reversed. (2 M. & Craig, 613.)

The chancellor held that the funds belonging to the municipal corporations named in the act became, upon its passage,

subject to certain public trusts, to be exercised by the new council only in the manner and for the purposes described in the act. He also held that an appropriation by the old corporation, after the passage of the new act and before the election of the new council, was not warranted by the act, and was therefore a breach of trust. He also held that when property is devoted to trusts which are to arise at a future time, and be exercised by trustees who are not yet *in esse*, any intermediate act done by the holders of such property, inconsistent with the security of the property, or the performance of the trusts when they shall arise, will be set aside, and if the trusts are of a public nature, the court will entertain jurisdiction upon information by the attorney-general, notwithstanding the trustees, after they have come *in esse*, decline to interfere.

At page 61 of the case it is said, if the property in question be subject to any public trust, and if the appropriation complained of be not consistent with such trust, but for purposes foreign to it, and there be not in the municipal corporation act, any provision taking from the court its ordinary jurisdiction in such cases, then it will follow that the attorney-general has, under the circumstances stated, a right to file the information, and to pray that the fund may be recalled, secured and applied for the public, or in other words, charitable purposes, to which it is by the act devoted.

I have given more time to this case than I otherwise would have done, because it is a leading case under the act referred to, and is, moreover, a very able and elaborate discussion of the question presented on the appeal.

In the *Attorney-General* v. *The Corporation of Poole* (2 Keen., 190), the attorney-general filed an information at the relation of certain rate-payers of the borough of Poole, to have it declared that one Parr, who had been corporation clerk of Poole, was not entitled, under the act above mentioned, to any compensation in respect to his office, or if any, not to as much as the defendant had awarded to him, and that a bond given to him for the sum awarded by the corpo-

ration might be given up to be canceled as fraudulent and void. It was claimed that Parr had resigned his office, and was not for that reason entitled to compensation under the act. A rate had been ordered to raise the money to pay the bond, and the rate-payers were the relators praying for relief against such rate. The defendants demurred, and the demurrers were allowed, the master of rolls holding that the statute provided a mode for redressing the wrong complained of, and it should be followed. But if the court would entertain jurisdiction, sufficient was not stated, to entitle the relators to relief. The only ground suggested on which relief in equity could be invoked was the protection of the trust property against a gross breach of trust. On appeal to the lord chancellor the decree was affirmed (4 M. and C., 17), but he reiterates his opinion in the case of the *Attorney-General* v. *Aspinall*, that the statute above mentioned created a trust, and that the court had jurisdiction to protect and enforce it on this relation of the attorney-general's; but concurring with the master of the rolls, that the information did not make a case entitling the complainant to equitable relief, he sustained the demurrers, but allowed the relator to amend.

In the case of the *Attorney-General* v. *Wilson* (9 Sim., 30), the information was filed upon the relation of the new corporation created under the act of parliament, so frequently referred to, to compel the return to the corporation of certain stocks which the old corporation had attempted to place out of the reach of the new corporation before the passage of the act. There was a demurrer. It was overruled by the vice-chancellor on the ground that the stock was part of a trust fund which it was the duty of the court to protect, and that the attorney-general was a proper party plaintiff.

Relief was granted in the *Attorney-General* v. *The Mayor, &c., of Liverpool* (1 M. & C., 171), arising on the aforesaid statute, on the ground that the property was trust property.

In the case of the *Attorney-General* v. *The Corporation of Norwich* (16 Simons, 225), the information was filed to restrain the defendant from appropriating money in the hands

The People *v.* Miner.

of the treasurer to procure an act of parliament to improve the river flowing through the city, so as to facilitate the operations of commerce, and which was collected under a local act of parliament, and required to be applied to purposes specified. An injunction had been obtained, and the defendants, on putting in their answer, moved to dissolve it. The motion was denied expressly on the ground that the intended appropriation would be a breach of trust.

In the *Attorney-General* v. *The Corporation of Litchfield* (13 Sim., 547), the same principle was applied. I have thus referred to all the cases cited in the opinion of DUER, J., except that in the 2d Bligh. U. R., 312, which I have not been able to find, and I think they all show quite conclusively, so far as they speak, that the attorney-general cannot proceed in chancery against a corporation to restrain its action unless it is on the ground of a breach of trust, or to prevent a public nuisance; and I have been unable to find any case in which his interference has been admitted upon any other ground. Of course, I do not mean to be understood as denying his right to apply to restrain corporations from exercising franchises not granted, or to annul corporations by reason of violations of their charters, or for non-user of their corporate powers. His right to interfere in these cases is expressly conferred, and must be exercised, or there would be a failure of justice.

The earliest reported case in this State in which the right of the attorney-general to maintain an action against a corporation has been considered, is that of the *Attorney-General* v. *The Utica Ins. Co.* (2 Johns, Ch. R., 371). There the attorney-general filed an information for the purpose of restraining the defendant from exercising banking powers, a franchise not granted by its charter, and which the legislature had forbidden to be exercised without authority of law. After a very able and elaborate review of the authorities, the chancellor held that the court had not jurisdiction to grant relief, and an injunction, which was moved for, was refused. He placed his decision on the ground that the

remedy was at law, by writ of *quo warranto*, or information in the nature of that writ; that carrying on banking business without authority was not such a mischief or public nuisance that this court would grant an injunction even if it had jurisdiction over public nuisances, which he thought it had not.

The jurisdiction of chancery on the relation of the attorney-general to restrain acts which would produce a public nuisance, is well settled in England. In the case of the *Attorney-General* v. *Forbes, supra,* the jurisdiction was exercised. (See cases cited.)

Chancellor KENT doubted whether the court had jurisdiction or control over corporations in respect to breaches of trust unless they were charitable. .

What constitutes a charity it is not always easy to determine. If all the moneys which belong to a corporation are impressed with a trust, and are to be deemed charitable, then, of course, the court has the right to prevent an illegal appropriation of them. But it seems to be considered in the English chancery that no property of a corporation is considered charitable unless it has been given to the corporation by the government or individuals to be devoted to the use of the public. And hence moneys raised by taxation is not within the control of the court.

The case of the *Attorney-General* v. *Heelis* (2 Sim. & Stu., 67) proceeds upon the distinction suggested, and is directly in point and against the power of the court to inter vene in case of trusts not charitable.

The only recent cases I have found in this State or in England in which the power of the attorney-general to maintain actions against corporations for the violation of their charters are, *The Attorney-General* v. *The Birmingham and Oxford R. R. Co.* (8 Eng. L. & E., 243); *Rosevelt* v. *Draper* (7 Abb. Pr. Rep., 108); *The People* v. *Lowber* (7 Abb., 161); *Same* v. *The Mayor* (9 id., 253); *Same* v. *The Mayor* (10 id., 144); *Same* v. *Same* (32 Barb., 102).'

. In the case of the *Attorney-General* v. *The Birmingham R. R. Co., supra,* the attorney-general filed an information

on the relation of certain inhabitants of Stratford-on-Avon, to have it declared that the defendants were obliged to build a branch road extending from their main line to Stratford-on-Avon, and praying that they be enjoined from building the main line until, or any faster, than they built the branch, The vice-chancellor allowed a demurrer to the information for the want of equity. He held that the attorney-general had no right to interfere, and said" he has the power to come here and restrain public companies from doing an act which they are not authorized to do when it interferes with the right of the public." This remark is relied upon as authorizing his interference in all cases where municipal corporations violate their charters. No more is meant than that when the act done or threatened will be a breach of trust or produce a public nuisance, he may proceed.

There is a dictum in the opinion of BALCOM, J., in *Roosevelt* v. *Draper*, *supra*, that for abuses of corporate authority by the corporate authorities of a city in the disposition of its property, the tax-payers must find a remedy through the ballot box, the grand jury or the attorney-general. The question was not in the case, whether, in the case of an illegal disposition of corporate property, the attorney-general was a proper or necessary party.

In the *People* v. *Lowber* (7 Abb., 158), an action was commenced by the attorney-general on the relation of Flagg, comptroller of the city, to restrain the corporation and Tomber from completing a contract for the purchase and sale of a lot of land on which to construct a market in the city of New York, the purchase being alleged to be made by the corporation in violation of law, INGRAHAM, J., intimates an opinion that in such a case as was then before him, the attorney-general might maintain an action. The question was not directly presented, and the case passed off on another and different ground.

In the *People* v. *The Mayor* (9 Abb., 253), the same learned judge reiterates the views expressed in the former

case. But the question was not directly before him, and the case was disposed of on another ground.

STRONG, J., in the *People* v. *The Mayor* (10 Abb., 144), adopts the views of INGRAHAM, J., in the preceding cases, and holds that the attorney-general may maintain an action to restrain a corporation from making an illegal or fraudulent disposition of its property.

In the case of the *People* v. *The Mayor* (32 Barb., 102), HOGEBOOM, J., held that when there is a clear violation of law, or a clear misuser or abuse of corporate powers on the part of a municipal corporation, an injunction may issue, and the people in such case are a proper party. The learned judge cites no case which sustains the doctrine asserted by him, except the dicta in the cases in the first district, above cited. The case of *Hale* v. *Cushman* (6 Met., 425), is most decidedly the other way.

DENIO, J., in *Rosevelt* v. *Draper* (23 N. Y., 326), says the only remedial process against the abuse of administrative power tending to taxation which one can have, is furnished by the elective franchise, or a proceeding in behalf of the State, or, in case of an act without jurisdiction, in treating the attempt to enforce the illegal tax as an act of trespass.

After a careful and somewhat extended examination of the cases, I am unable to find any case in which the right of the attorney-general to maintain actions against municipal corporations has been carried to the length asserted in the opinion of HOGEBOOM, J., and in 2 Duer, cited *supra*. And with the most profound respect for the learned judge, I think it is not in accordance with the decisions in this State or in England.

There is in the opinion of DENIO, J., in *Doolittle* v. *The Supervisors of Broome* (18 N. Y., 157), a very full examination of the cases which had been relied on in that case in support of the right of a citizen to restrain a municipal corporation from doing an unlawful act. And after declaring that he has no such right, he proceeds to give his views as to whom the right to maintain an action in such case belongs; and his conclusions are, that when the act done or threatened would

The People *v.* Miner.

result in a public nuisance the remedy is by indictment; or when prevention is sought on information in equity by the attorney-general, and when the act threatened is a breach of trust, it is the duty of that officer to institute proceedings to prevent it.   He does not intimate that there is any other case in which the people or their officer may maintain actions to restrain an unlawful exercise of corporate power.

. If, however, it should be held to be the law that the attorney-general may proceed by information to restrain the abuse of corporate power, it does not follow that he has power to interfere in a case like the one before us.   The commissioners are not a corporation; they are mere agents, authorized to perform certain acts, which, when lawfully performed, bind the tax-payers of the town.

The reasons which induced the courts to recognize the attorney-general as the proper person to proceed against corporations do not apply to persons in the situation of these commissioners.

I have not thus far alluded to other cases referred to by plaintiff's counsel.   I have examined the cases, and I do not find that they establish any rule different from that recognized in the modern cases, except one or two very old cases which would not, I apprehend, be held to be law at this day, either in England or in this country.   I am utterly opposed to the adoption of a rule that will permit a State officer to intermeddle in the affairs of every corporation in the State. It can only lead to abuse, and to relieving persons directly in interest in them, from the duty and responsibility of seeing that abuses are corrected by those immediately concerned.

The order of the Special Term should be reversed.

Judgment reversed.