THE STATE, EX REL. BROWN, APPELLEE, *v.* NEWPORT CONCRETE
CO., APPELLANT.

[Cite as State, ex rel. Brown, v. Newport
Concrete Co. (1975), 44 Ohio App. 2d 121.]

(No. C-74163—Decided May 5, 1975.)

*Mr. William J. Brown,* Attorney General, and *Mr.
Richard P. Fahey,* for appellee.
*Mr. Donald E. Calhoun,* for appellant.

HOLMES, J.   This matter involves the appeal of a sum-
mary judgment granted by the Court of Common Pleas of
Hamilton County, which court, after a review of the plead-
ings, affidavits, and answers to interrogatories, entered a
judgment compelling the defendant, Newport Concrete
Company, to remove a certain concrete structure from the
bed of the Little Miami River that the trial court had found
to interfere with the public's free use of such stream for
navigation purposes.

The original Complaint was filed by the Attorney
General of Ohio on behalf of the state and its citizens. It

alleged that the state is the owner in trust of the Little Miami River, "a navigable stream and watercourse used by the citizens of Ohio and the United States."

The Complaint stated, and the facts show, that the defendant owned land on the bank of the Little Miami River, as well as land on an island in the middle of the river adjacent to the main bank of the river. The defendant constructed a concrete causeway or ford, running from the south bank of the river to the island. This causeway was constructed in order that the defendant's trucks might move from the south bank to the island, and haul sand and gravel that had been extracted from the island to the defendant's processing plant on the south bank of the river.

The facts show that the causeway was constructed by placing three prestressed concrete tubes, five feet square and thirty feet long, with forty-eight inch round openings, in the bed of such stream, permitting the water to flow through. On top of such tubes was placed a concrete slab as a roadway for the defendant's trucks. The water, depending upon its volume or height, would either flow over the causeway or through the tubes.

Evidence adduced by way of an affidavit on behalf of the state pursuant to a motion for summary judgment showed that such causeway was an obstacle to the free passage of boats or canoes along that portion of the Little Miami River. More particularly, the affidavit of Mr. Ross E. Terrell stated that he was the owner of a canoe livery, which was operating upstream from the causeway, and that he was experiencing economic detriment in that his customers could not canoe downstream from the livery without being impeded by the defendant's causeway. Consequently, Mr. Terrell stated, there is only the more difficult upstream canoeing.

There was also evidence, by way of an affidavit, that the defendant's causeway had occasioned a tragic mishap when two young men, who were wading in the water nearby, were drawn into the tube, as a result of the rapidity of the current and flow of the water occasioned by the placement of such tubes, and one of the young men was drowned. The trial court, in sustaining the motion of the state of Ohio

for summary judgment, and in granting the injunction sought by the state, found the Little Miami River to be a "navigable stream" and applied the theory that the streams and bodies of water, as other natural resources within the state, are held in trust by the state of Ohio for all its citizens.

The trial court ordered the defendant to remove its causeway from the river. Further, the court permanently enjoined the defendant from "obstructing, impeding, or interfering with navigation, fishing, recreational activities, or other uses of the waters of the state of Ohio, specifically, the Little Miami River * * *." Interestingly, the trial court also ordered the defendant to pay into the general revenue fund of the state of Ohio compensatory damages in the sum of one cent.

The basic issue involved in this case is whether or not the Little Miami River in the general area under consideration is in fact a "navigable river" under the interpretation of such term in Ohio law. Such determination of whether a given body of water is navigable is important from the standpoint of deciding whether there are certain inherent rights that the public has in the free and uninterrupted use of such waters.

As noted in *Mentor Harbor Yachting Club* v. *Mentor Lagoons, Inc.*, (1959), 170 Ohio St. 193, a division of watercourses into navigable and nonnavigable is merely a method of dividing them into public and private, which is the more natural classification. A naturally navigable watercourse is navigable in law and is a public watercourse. The question presented here is not the right or title of the littoral or riparian owner to the subaqueous soil of this stream, as it is agreed by all parties hereto that the law in Ohio is clear that the ownership and title of such land under the water thereof is in the abutting owner.

Pursuant to Ohio law, as was true under the common law, the title of lands bordering on a navigable stream extends to the middle of the stream. *Day* v. *Railroad Company* (1886), 44 Ohio St. 406; *June* v. *Purcell* (1881), 36 Ohio St. 396; *State, ex rel. Anderson,* v. *Preston* (1963), 2 Ohio App. 2d 244. Although the title to the subaqueous soil under

a stream to the center thereof be legally that of the riparian owner, if such stream is determined to be a "navigable" stream, such title and ownership is subject to the use the public may make of such waters for the purpose of navigation. *Admrs. of Gavit* v. *Chambers and Coats* (1828), 3 Ohio 496; *Lamb* v. *Rickets* (1842), 11 Ohio 311; *Walker* v. *Board of Public Works* (1847), 16 Ohio 540.

In like manner, if a riparian owner has property on opposite sides of a navigable stream, such owner has title to land from bank to bank under such stream, subject to the public right of navigation. *Walker* v. *Board of Public Works, supra.*

Again, as stated, the fundamental question here is not whether the defendant has title to the soil under the water, but whether the river at this location can be determined from the facts presented to be a "navigable" stream, and therefore subject to the general public use for navigation purposes.

Therefore, the questions to be resolved are (1) what is the legal definition of "navigable" water? and (2) did the facts presented to the trial court logically and lawfully permit it to find that the Little Miami River at this location was navigable? The nature of the elements, requisites and factors involved in determining these questions has been well stated in 56 American Jurisprudence 645, Waters, Section 179, as follows:

"Navigability, in the sense of actual usability for navigation or navigability in fact, as a legal concept embracing both public and private interests, is not susceptible of definition or determination by a precise formula which fits every type of stream or body of water under all circumstances and at all times. A general definition or test which has frequently been approved is that rivers or other bodies of water are navigable when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water."

The aforestated quotation expresses the historical view

of whether or not a stream or body of water may be characterized as "navigable." In this regard, we find that in pertinent cases in the United States Supreme Court the emphasis in the past has been upon a determination whether the water is navigable for some purpose useful to trade or commerce. Accordingly, see the cases of *The Daniel Ball* (1870), 77 U. S. 557, and *United States* v. *Utah* (1931), 283 U. S. 64.

In like manner, in the case of *Toledo Liberal Shooting Co.* v. *Erie Shooting Club* (C. A. 6, 1898), 90 F. 680, 682, the court stated: "* * * [A]ll waters are held navigable in law, and subject to a public use, which are by their character capable of use as highways, for purposes useful to trade or agriculture. It is the capability of being navigated for useful purposes which is the test."

Exemplary of the adherence to such criteria for the legal determination of whether a body of water is "navigable" is the statement to be found within the early Ohio case of *Hickok* v. *Hine* (1872), 23 Ohio St. 523, 527 as follows:

"A river is regarded as navigable which is capable of floating to market the products of the country through which it passes, or upon which commerce may be conducted; and, from the fact of its being so navigable, it becomes in law a public river or highway. The character of a river, as such highway, is not so much determined by the frequency of its use for that purpose as it is by its capacity of being used by the public for purposes of transportation and commerce."

Such case was cited and followed in the subsequent Ohio case of *East Bay Sporting Club* v. *Miller* (1928), 118 Ohio St. 360, wherein the court also adopted the test of navigability as set forth in the *Erie Shooting Club* case, *supra*. It has generally been held that it is the question of usability or capacity for navigation which is controlling in the determination of the navigability of the stream, and not the fact that at a particular time it may not be useful for the purpose of commerce, for a stream may not be useful for commerce at one time, and yet circumstances may

make it so at another time. *United States* v. *Appalachian Electric Power Co.* (1940), 311 U. S. 377; *Hickok* v. *Hine, supra.*

Further, the cases seem to have generally held that a stream or body of water may be legally determined to be navigable even though there may be found at various locations thereon certain natural barriers or obstructions, such as rapids, sandbars, or falls. Such natural restrictions have been found not to preclude the finding that a stream is legally navigable in at least certain stretches thereof. *United States* v. *Appalachian Electric Power Co., supra; United States* v. *Utah, supra.*

The state legislative bodies in a number of states have seen fit to enact laws defining the term "navigable waters" for general application within those states. However, the Ohio General Assembly has not provided a general definition to be applied to bodies of water for purposes of determining whether such have "navigable" characteristics. There is, however, a definition of "navigable waters" to be found at R. C. 1547.01(J) which is made specifically applicable to the chapter dealing with laws pertaining to watercraft. The definition reads as follows:

"(J) 'Navigable waters,' for the purposes of Chapter 1547. of the Revised Code, means waters which come under the jurisdiction of the department of the army of the United States and any waterways within or adjacent to this state, except inland lakes having neither a navigable inlet or outlet."

This definition, as it would relate to the control of watercraft using the waters of this state, is at least indicative that the General Assembly viewed the need for control over watercraft on the larger bodies of water under the jurisdiction of the Army Corps of Engineers, bodies which might historically have been viewed as capable of commercial use, as well as the need for control of watercraft using "any waterways within or adjacent to this state [except inland lakes having neither a navigable inlet or outlet]."

As in other areas of legal interpretation of words and

phrases, especially where it involves the changing public uses, activity and involvement in such area of concern, the definition of "navigable waters" and "navigability" has not been a static one. Pertinent is the language to be found in the early case of *Pollock* v. *Cleveland Ship Building Co.* (1897), 56 Ohio St. 655 at page 668, as follows:

"Clearly the term 'easement of navigation,' should not be construed in any narrow, scientific sense, but, having in mind the reservation of the easement by the state is for the benefit of the public in its use of the highway, should receive a construction in harmony with the nature of the uses of the water by the public, and the objects of a public nature to be accomplished by such uses."

There is to be found a further development of such philosophy, that legal construction should be in harmony with the nature of the uses of the water by the public, in *Coleman* v. *Schaeffer* (1955), 163 Ohio St. 202, which case specifically expanded the test of navigability to include a stream's availability for boating and recreation, as well as the use of the stream for pecuniary profit. The transition was yet further developed in the case of *Mentor Harbor Yachting Club* v. *Mentor Lagoons, Inc., supra* at 200, where the Supreme Court stated:

"* * * [T]his increased recreational use of our waters has been accompanied by a corresponding lessening of their use for commerce. We are in accord with the modern view that navigation for pleasure and recreation is as important in the eyes of the law as navigation for a commercial purpose."

We hold that the modern utilization of our waters by our citizens requires that our courts, in their judicial interpretation of the navigability of such waters, consider their recreational use as well as the more traditional criteria of commercial use. In the instant case, the facts as presented to the trial court show that such stream is in fact used for recreational purposes. The affidavit of Mr. Terrell so stated, as did the answers to the defendant's interrogatories.

The evidence before the trial court upon the question

of a summary judgment would reasonably permit the findding that the stream in the area of the defendant's property could be concluded to be navigable.

We also hold that the trial court properly found that the state of Ohio holds the waters of the Little Miami River in trust for the people of Ohio. The public trust theory, as it relates to the natural resources of our country, is a philosophy which has grown rapidly among our natural resource legal advocates, and has been accepted with greater breadth by our courts in this decade.

It is fundamental that the title to publicly owned lands and resources must be considered to be held in trust in perpetuity for the continued general public use. Additionally, the public trust theory may, in a given instance, properly be applied to the reasonable use for navigation purposes by the public of the water resources within this state, where the basic underlying title and ownership of the subaqueous soil is in a private individual, as herein. Such is held to be the law applicable to the waters of the river in question in this matter. The state of Ohio holds these waters in trust for those Ohioans who wish to use this stream for all legitimate uses, be they commercial, transportational, or recreational. The second assignment of error is dismissed.

As to the third assignment of error, we need merely to state that the Attorney General of Ohio is the constitutional legal officer for the state, and the officer generally relied upon to institute any necessary legal action to protect the property rights of the state, and the rights of its citizens pertaining to the use and enjoyment of such property. The Attorney General has noted in his brief that he has, early in the history of Ohio, been recognized by the Supreme Court of Ohio as having the lawful authority to bring a civil action in equity to abate a public nuisance, *State, ex rel. Little,* v. *Dayton & S. E. Rd.* (1881), 36 Ohio St. 434.

It is quite natural, pursuant to the general constitutional and statutory powers of the Attorney General of the state, that his office is the one which should exercise the rights of the state of Ohio as they relate to the natural resources of the state, and the rights of the citizens

of this state to the continued free use of such resources as are held in trust by our state. An example of the legislative recognition of such principle may be found in the chapters of Ohio law dealing with the protection of our environment, particularly Chapter 3745, providing that the Attorney General, along with county prosecutors and city attorneys, has been designated as the legal officer to prosecute, or bring actions for the enjoining of violations of acts dealing with water pollution, air pollution and solid waste control. The third assignment of error is hereby dismissed.

As stated previously, the trial court had sufficient evidence before it upon the motion for summary judgment to have determined that the causeway, as constructed by the defendant across the Little Miami River, generally impeded the free use of such river by the public, and such finding is not against the manifest weight of the evidence. Therefore, the fourth assignment of error is hereby dismissed.

Further, based upon our comments above, the defendant's sixth and seventh assignments of error are also not well taken, and are hereby dismissed.

Based upon all of the foregoing, the judgment of the Common Pleas Court of Hamilton County, Ohio, is hereby affirmed.

*Judgment affirmed.*

COOK, P. J., and BUZZARD, J., concur.

COOK, P. J., of the Eleventh Appellate District, and HOLMES, J., of the Tenth Appellate District, sitting by designation in the First Appellate District.

BUZZARD, J., of the Court of Common Pleas of Columbiana County, retired, assigned to active duty under authority of Section 6(C), Article IV, Constitution, sitting by designation in the First Appellate District.