**STATE OF OHIO, Plaintiff,**

v.

**UNITED TRANSPORTATION, INC., et al., Defendants.**

No. C–2–78–924.

United States District Court, S. D. Ohio, E. D.

Jan. 28, 1981.

William J. Brown, Atty. Gen., Eugene McShane, Alan Witten, Patricia Vail, Paul Eklund, Asst. Attys. Gen., Antitrust Section, Columbus, Ohio, for plaintiff.

Charles E. Brown, Crabbe, Brown, Jones, Potts, Schmidt, Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

Plaintiff, State of Ohio, instituted this antitrust action against the defendants claiming that they have violated federal and state antitrust laws by monopolizing and restraining competition in the Columbus, Ohio market for taxicab services. The defendants, United Transportation, Inc., its affiliated taxicab companies and its owners have filed motions under Rule 12(b)(1), (b)(6), and (b)(7), Federal Rules of Civil Procedure, seeking dismissal of the action. Also pending before the Court is plaintiff's motion under 12(b)(6), F.R.C.P., to strike certain new material, regarding the abstention doctrine, which the defendants set forth in one of their reply memoranda.

Specifically, the plaintiff State of Ohio in its complaint, filed on its own behalf and on behalf of its citizens, alleges that the defendants: (1) have combined and conspired to restrain trade in the provision of taxicab services in Columbus in violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1, and Section 1331.01(B) of the Ohio Revised Code;[1] (2) have combined, attempted to, and, in fact, monopolized the taxicab services market in Columbus in violation of 15 U.S.C. § 2 and Section 1331.01(B) of the Ohio Revised Code;[2] and, (3) have, by their acquisition of direct competitors, restrained trade, suppressed competition and tended to create a monopoly in violation of 15 U.S.C.

---

1. Section 1 of the Sherman Act, 15 U.S.C. § 1 provides in part:

   Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal . . . .

   Ohio Revised Code § 1331.01 provides:

   As used in Sections 1331.01 to 1331.14 of the Revised Code:

   \* \* \* \* \* \*

   (B) 'Trust' is a combination of capital, skill, or acts by two or more persons for any of the following purposes:

   (1) To create or carry out restrictions in trade or commerce;

   (2) To limit or reduce the production, or increase or reduce the price of merchandise or a commodity;

   (3) To prevent competition in manufacturing, making, transportation, sale, or purchase of merchandise, produce, or a commodity;

   (4) To fix at a standard or figure, whereby its price to the public or consumer is in any manner controlled or established, an article or commodity of merchandise, produce, or commerce intended for sale, barter, use, or consumption in this state;

   (5) To make, enter into, execute, or carry out contracts, obligations, or agreements of any kind by which they bind or have bound themselves not to sell, dispose of, or transport an article or commodity, or an article of trade, use, merchandise, commerce, or con-

   sumption below a common standard figure or fixed value, or by which they agree in any manner to keep the price of such article, commodity, or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of an article, commodity, or transportation between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, purchasers, or consumers in the sale or transportation of such article or commodity, or by which they agree to pool, combine, or directly or indirectly unite any interests which they have connected with the sale or transportation of such article or commodity, that its price might in any manner be affected;

   (6) To refuse to buy from, sell to, or trade with any person because such person appears on a blacklist issued by, or is being boycotted by, any foreign corporate or governmental entity.

   \* \* \* \* \* \*

   A trust as defined in division (B) of this section is unlawful and void.

2. Section 2 of the Sherman Act, 15 U.S.C. § 2, makes it unlawful for a person to "monopolize, or attempt to monopolize, or combine with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations . . . ."

§ 1, 15 U.S.C. § 18, and Section 1331.01(B) of the Ohio Revised Code.[3]

### I. Attorney General's Standing To Bring Suit

The defendants' primary contention in seeking the dismissal of this action under Rule 12(b)(1) and (b)(6), F.R.C.P., is that the Ohio Attorney General has exceeded his capacity and authority, prescribed by Ohio's statutory and common law, in bringing suit

3. 15 U.S.C. § 18 [Acquisition by one corporation of stock of another] provides in part:
No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

4. While the defendants' major contention focuses on the authority and capacity of the Attorney General, the defendants have procedurally sought dismissal under Rule 12(b)(6) (failure to state a claim upon which relief can be granted) and Rule 12(b)(1) (lack of jurisdiction over the subject matter).
The Court wishes to note that the resolution of defendants' question has no bearing on whether the plaintiff's complaint under Rule 12(b)(6) alleges sufficient facts to state a claim under federal antitrust law. A Rule 12(b)(6) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Also see Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976), and 5 Wright & Miller, Federal Practice and Procedure: Civil §§ 1205–1207, 1215–1224, 1228. The defendants have not challenged plaintiff's complaint in this regard.
Furthermore, with regard to the Rule 12(b)(1) motion, the defendants do not dispute that this Court will have jurisdiction over the subject matter if the Court determines that the Attorney General has the authority to bring this action. The Court views the critical issue here as being one of standing. In Malamud v. Sinclair Oil Corp., 521 F.2d 1142 (6th Cir. 1975), the Sixth Circuit stated at 1146–47:
As a general proposition, the doctrine of standing is one aspect of the broader concept of justiciability. [Citation omitted] * * * Justiciability is an analytical approach that has been 'developed to identify appropriate occasions for judicial action, both as a matter of defining the limits of the judicial power

in federal court without the approval and authorization of either the Governor or the Ohio General Assembly. The Court views the defendants' contention as challenging the Attorney General's standing to bring this suit.[4]

█ Federal courts have exclusive jurisdiction over federal antitrust violations pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. § 1337.[5] "The basis for a standing chal-

created by Article III of the Constitution, and as a matter of justifying refusals to exercise the power even in cases within the reach of Article III.' [Citations omitted.] * * * Justiciability, then, is a jurisdictional concept founded in part upon Article III and in part upon judicial discretion. [Citation omitted.] * * * Standing is just one of several more specific categories derived from the general considerations of justiciability.
'The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.' Flast v. Cohen, 392 U.S. 83, 99 [88 S.Ct. 1942, 1952, 20 L.Ed.2d 947] (1968).
Also see, Baxley v. Rutland, 409 F.Supp. 1249 (N.D.Ala.1976).
Finally, as part of their Rule 12(b)(1) and (b)(6) motion, defendants have asserted that "the Court lacks subject matter jurisdiction over the state antitrust law claims being asserted by the Complaint." The Court will DEFER consideration of this motion and at a later date decide whether plaintiff's state law claims are appropriate matters to be resolved under the Court's pendent jurisdiction. Accordingly, defendants' motion to dismiss plaintiff's state law claims is DENIED without prejudice.

5. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides for treble damages and reads:
Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.
Section 16 of the Clayton Act, 15 U.S.C. § 26, provides for injunctive relief and in part reads:
Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws . . . .
The relevant portion of 28 U.S.C. § 1337 provides:

lenge in antitrust law is Section 4 of the Clayton Act which attempts to define those persons who may maintain an action under any of the substantive antitrust provisions." *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1147 (6th Cir. 1975). It has been settled that a state qualifies as a "person" under Sections 4 and 16 of the Clayton Act and can, therefore, institute actions, either in its proprietary capacity or as *parens patriae*, in federal court for federal antitrust violations. *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 261, 92 S.Ct. 885, 890, 31 L.Ed.2d 184 (1972); *Georgia v. Pennsylvania Rd. Co.*, 324 U.S. 439, 447, 65 S.Ct. 716, 721, 89 L.Ed. 1051 (1945). The role of the Attorney General of Ohio in protecting the state's interests under the federal antitrust laws is an issue governed by Ohio statutory and common law. *See, State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 (5th Cir. 1975).

█ Upon review and careful consideration of the relevant statutes and case law, as well as the detailed briefs submitted by the parties, the Court determines that defendants' motion is without merit. The Ohio Attorney General has the statutory and common law authority to assert on his own initiative the State of Ohio's rights under the federal antitrust laws.[6]

In *State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266 (5th Cir. 1976), the facts of which are similar to the case at bar, the Fifth Circuit provides excellent guidance to this Court. There the court explained the pervasive common law powers of the Attorney General:

> The office of the attorney general is older than the United States and older than the state of Florida. * * *
>
> [T]he attorneys general of our states have enjoyed a significant degree of autonomy. Their duties and powers typically are not exhaustively defined by either constitution or statute but include all those exercised at common law. There is and has been no doubt that the legislature may deprive the attorney general of specific powers; but in the absence of such legislative action, he typically may exercise all such authority as the public interest requires. And the attorney general has wide discretion in making the determination as to the public interest. *Id.* at 268–69.

Included as one of the attorney general's common law powers is his power "[t]o prosecute all actions, necessary for the protection and defense of the property and revenues of the crown." *People v. Miner*, 2 Lans. 396, 398 (N.Y.Sup.Ct.1868). *See also, Howard v. Cook*, 50 Idaho 391, 83 P.2d 208, 211 (1938), and *D'Amico v. Board of Medical Examiners*, 11 Cal.3d 1, 14–15, 112 Cal.Rptr. 786, 796, 520 P.2d 10, 20 (1974).

There is no question that the Ohio Attorney General's powers are consistent with the above common law paradigm. The office of the Attorney General of Ohio was created by Article III, Section 1 of the Ohio Constitution of 1851. And although the Ohio Constitution does not specifically list the attorney general's powers, it nonetheless was "adopted with a recognition of established contemporaneous common law principles, and . . . did not repudiate but cherished the established common law." *State v. Wing*, 66 Ohio St. 407, 420, 64 N.E. 514 (1902).

█ The Ohio Supreme Court has long recognized the broad inherent common law powers of the attorney general in serving in his dual role with regard to civil litigation: championing the proprietary and pecuniary interests of the government itself, and contesting infringements of the rights of the

---

(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . . .

**6.** The defendants have, in the alternative, asked the Court to abstain from deciding this issue until the state courts of Ohio have ruled on defendants' position. The invitation to abstain is declined. The Court sees this as an inappropriate occasion to invoke the abstention doctrine. *See, e. g., State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266 (5th Cir. 1976). Plaintiff's Rule 12(b)(6) motion to strike certain new material, which is founded on defendants' proffered abstention argument, thus becomes moot and accordingly will be DENIED.

general public via the doctrine of *parens patriae.* In *State ex rel. Doerfler v. Price,* 101 Ohio St. 50, 57, 128 N.E. 173 (1920), the court stated:

> [T]he attorney general of Ohio is a constitutional officer of the state, in the executive department thereof, chargeable with *such duties as usually pertain to an attorney general, and especially with those delegated to him by the general assembly of Ohio ....* [Emphasis added.]

See also, *State ex rel. Brown v. BASF Wyandotte Corp.,* 67 O.Op.2d 239, 248 (Cuy. Co.C.P.1974). Also recognized as being within the common law powers of the Ohio Attorney General is the power to bring, on his own initiative, civil actions on behalf of the state. *State ex rel. Little v. Dayton & Southwestern Railroad Co.,* 36 Ohio St. 434, 440 (1881); *State ex rel. Brown v. Newport Concrete Co.,* 44 Ohio App.2d 121, 128, 336 N.E.2d 453 (Ham.Co.Ct.App.1975).

The General Assembly's principal legislative delegation of the duties of Ohio's Attorney General is set forth in § 109.02, Ohio Revised Code, which provides in relevant part:

> The attorney general is *the chief law officer for the state and all its departments ....* No state officer, board, or the head of a department or institution of the state shall employ, or be represented by, other counsel or attorneys at law. The attorney general shall appear for the state in the trial and argument of all civil and criminal causes in the supreme court in which the state is directly or indirectly interested. When required by the governor or the general assembly, he shall appear for the state in any court or tribunal in a cause in which the state is a party, or in which the state is directly interested. Upon the written request of the governor, he shall prosecute any person indicted for a crime. [Emphasis added.]

Furthermore, in 1967, the Ohio General Assembly, through the enactment of §§ 109.81 and .82,[7] extended the enumerated powers of the office. Section 109.81 provides:

> The attorney general *shall act as the attorney at law for the state* and may act, by agreement, as the attorney at law for any political subdivision of the state or governing body thereof in antitrust cases *and do all things necessary to properly represent them in any such case under the laws of any state or the federal government.* [Emphasis added.]

The defendants focus on the latter part of the language in § 109.02 and essentially argue that under its mandate, the attorney general is prohibited from initiating any federal antitrust case in the name of the state without prior approval from the Ohio General Assembly or the Governor. Furthermore, the defendants argue that the language in § 109.81 supports this position since the "attorney general shall act as the attorney at law for the State" and, as such, he cannot initiate a claim on behalf of his client without prior approval. As plaintiff has aptly pointed out in its brief, defendants' argument is inconsistent with a fair reading of the statutory scheme and with the import of the common law and the interpretative Ohio case law which should be read in conjunction with it.

The defendants concede that the attorney general has full discretionary authority to commence actions in state courts based on state antitrust violations under the Ohio Valentine Act, § 1331.01 *et seq.* This Court feels that pursuant to §§ 109.02 and .81, the Ohio Attorney General also has the authority to assert the state's rights under federal antitrust laws in federal courts.

█ Sections 109.81 and .82 should be read as supplementing and extending § 109.02; not as merely repeating it. Un-

---

7. Section 109.82 [Antitrust section] provides: There is hereby created in the office of the attorney general a section of antitrust. Ten percent of all recoveries obtained by the attorney general pursuant to section 109.81 of the Revised Code by settlement, or by judgment in any court, shall be paid into the state treasury to the credit of the attorney general antitrust special account. The attorney gen-

eral antitrust special account shall be used insofar as funds are available therein for the expenses of the antitrust section. The expenses of the antitrust section in excess of the funds available in the attorney general antitrust special account shall be paid out of the regular appropriation to the office of the attorney general.

der § 109.02, the attorney general is "the chief law officer for the state" and, as such, under § 109.81, he "shall act as the attorney at law for the state . . . and do all things necessary to properly represent [the state] in any [antitrust] case under the laws of any state or the federal government." To find otherwise and accept the position of the defendants would create a statutory dichotomy regarding antitrust matters: the attorney general would have the duty to initiate antitrust actions in cases under state law, but, under federal law, this duty would instead lie with the General Assembly or the Governor. The Court refuses to accept that this could be what the General Assembly ever anticipated. Moreover, §§ 109.02 and .81 should be construed consistently with the attorney general's broad common law powers set forth above. *See* §§ 1.49(D) and 1.11, Ohio Revised Code. In the absence of specific statutory language to the contrary, his common law powers should not be repudiated. *Smith v. United Properties, Inc.*, 2 Ohio St.2d 310, 209 N.E.2d 142 (1965).

■ The defendants have relied heavily on the case of *State ex rel. Brown v. Rockside Reclamation, Inc.*, 47 Ohio St.2d 76, 351 N.E.2d 448 (1976), for the proposition

> that where the Ohio attorney general's authority is subject to prior authorization by an appropriate governmental official (as it is under §§ 109.02 and 109.81 . . .), the attorney general has no authority to bring such an action directly on his own motion without such authorization.

The Court disagrees noting that *Rockside* is distinguishable on its facts and cannot be read so broadly to support defendants' proposition. The Ohio Supreme Court in *Rockside* dealt with conflicting statutory schemes, one of which directly limited the power of the Ohio Attorney General in the area of solid waste disposal.[8] This Court is not faced with the same circumstances. As stated earlier, §§ 109.02 and .81 provide no such statutory limitation on the Ohio Attorney General's powers. Rather, the Court interprets Ohio's common law and § 109.81 regarding the Attorney General's power to "do all things necessary to properly represent [the state] in any [antitrust] case under the laws of any state or federal government," to include the power to bring, on his own initiative, suits in this court. Accordingly, the defendants' motion to dismiss in this regard is DENIED.

## II. Joinder of City of Columbus Not Necessary

■ Alternatively, the defendants have requested pursuant to Rule 12(b)(7), F.R. C.P., that this Court either dismiss the action due to plaintiff's failure to join the City of Columbus as a necessary and indispensable party under Rule 19 F.R.C.P., or, that the Court *sua sponte* join the city as a party to this action. The defendants essentially argue that because the city has pervasive regulations governing the taxicab industry, it is a necessary and indispensable party in the resolution of this suit. The State of Ohio, on the other hand, claims that the defendants' unlawful antitrust conduct is separate from and wholly unrelated to activities which the city seeks to regulate.

First, the Court sees no merit in defendants' motion to dismiss this suit for plaintiff's failure to sue the City of Columbus. Since the city is subject to service of process and its joinder would not deprive this Court

---

8. In *Rockside*, the Attorney General, acting on his own initiative, brought suit under O.R.C. § 3767.32 of Ohio's general nuisance law. Under that section, it was unlawful to dispose any *waste materials in any watercourse or upon its banks* unless a permit was obtained through the Environmental Protection Agency [EPA] under the administrative procedures of O.R.C. Chapter 6111. The defendant, Rockside, however, was a solid waste disposal operation licensed and governed exclusively by Ohio's Solid Waste Disposal Statute, O.R.C. 3734.01 *et seq.* Pursuant to § 3734.10 of that statute "[t]he Attorney General, . . . upon complaint of . . . the Director of Environmental Protection, . . . shall prosecute" for violations of the statute. Accordingly, the defendant challenged the *power of the attorney general to initiate the* suit, absent a request to do so by the EPA Director. The Ohio Supreme Court agreed, but only after narrowly reading § 3734.10 in light of the competing and conflicting statutory schemes regulated by the EPA. *See State ex rel. Brown v. Rockside Reclamation, Inc., supra* at 81–83, 351 N.E.2d 448.

of jurisdiction, the city is not an indispensable party under Rule 19(b), F.R.C.P. Therefore, the suit is certainly not susceptible to dismissal under Rule 12(b)(7). *See e. g., State of Illinois ex rel. Scott v. Butterfield*, 369 F.Supp. 632, 645 (N.D.Ill.1975).

The City of Columbus is at very most a necessary party or "a party to be joined if feasible" and whether this Court should require joinder turns on the criteria set forth in Rule 19(a), F.R.C.P.:

> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if
>
> (1) in his absence complete relief cannot be accorded among those already parties, or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

"However, Rule 19 does not set forth a test capable of mechanical application. It must be read with a feeling for the various policy considerations which underlie it." *Boles v. Greeneville Housing Authority*, 468 F.2d 476, 478 (6th Cir. 1972).

The Court is persuaded by the state's memorandum and concludes that the joinder of the City of Columbus is not necessary for a just adjudication of this action. The three primary objectives of Rule 19—the "(1) avoidance of unnecessary or multiple litigation; (2) providing complete relief to the parties before the Court; and (3) protection of the rights and interests of any absent parties," *Freeman v. Marine Midland Bank—New York*, 419 F.Supp. 440, 451 (E.D.N.Y.1976)—would not be served by joining the City of Columbus in this action.

The Court sees no substantial interest of the city's that needs to be protected by requiring its presence. The validity and integrity of the city's taxicab regulations, Columbus City Code Chapter 501 *et seq.*, are not at issue in this case and the Court sees no significant relationship between the state's requested relief and the regulatory concerns of the city. Furthermore, complete relief can be granted between the existing parties without any significant disturbance to the city's regulatory scheme. Finally, regardless of this Court's disposition, the defendants would not be subjected "to a substantial risk of incurring double, multiple or otherwise inconsistent obligations" as prescribed by Rule 19. For these reasons, the Court determines that defendants' motion is without merit and, therefore, DENIED.

In conclusion, for the reasons set forth above, the defendants' motion to dismiss this action under Rule 12(b)(1), (b)(6), and (b)(7) is DENIED. The defendants' motion to join the City of Columbus as a party in this action is also DENIED. Finally, the plaintiff's motion to strike certain new material presented by the defendants is DENIED.

IT IS SO ORDERED.